MORGAN v CINCINNATI INSURANCE COMPANY

Docket No. 63465. Argued April 15, 1980 (Calendar No. 6).—Decided June 19, 1981.

Helen Morgan brought an action against Cincinnati Insurance Company to recover under a fire insurance policy for fire damage to a home which she and her estranged husband Robert Morgan owned as tenants by the entireties, and to personal property. The plaintiff's claim had been denied by the insurer under the fraud provision of the policy after it was determined that Robert Morgan had intentionally started the fire. The Calhoun Circuit Court, Creighton R. Coleman, J., granted summary judgment for the defendant as to the claim for the real property on the ground that fraud by one coinsured party bars recovery by another coinsured party. The Court of Appeals, D. E. Holbrook, Jr., P.J., and R. B. Burns and Bashara, JJ., affirmed (Docket No. 78-3514). Plaintiff appeals. *Held:*

The fraud of the plaintiff's husband in setting the fire does not bar recovery by the wife. The plaintiff's right to recover is determined by her rights under the contract of insurance, not by her interest in the insured property. The statutory clause limiting the fire insurer's liability in case of fraud by "the insured" will be read to bar only the claim of an insured who has committed the fraud, and not the claim of any insured who is innocent of fraud.

1. The insurer argues that whether the plaintiff can recover

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance § 194.

[2] 17 Am Jur 2d, Contracts § 300.

74 Am Jur 2d, Suretyship §§ 7, 8.

[3] 43 Am Jur 2d, Insurance § 239.

[4, 7, 15] 43 Am Jur 2d, Insurance §§ 762, 1011.

44 Am Jur 2d, Insurance § 1365.

Fraud, false swearing, or other misconduct of insured as barring recovery on property insurance by innocent coinsured. 24 ALR3d 450.

[8-12, 16] 41 Am Jur 2d, Husband and Wife §§ 55, 56.

[9] 41 Am Jur 2d, Husband and Wife §§ 16, 17, 536, 537.

[12] 41 Am Jur 2d, Husband and Wife §§ 72, 106.

[13] 43 Am Jur 2d, Insurance § 762.

[14] 41 Am Jur 2d, Husband and Wife § 2.

in this case depends on whether the interests of the insured in the property are considered joint or several, and that the interests of tenants by the entireties are unified, but this misses the point, because no interest in the insured property was tainted by fraud, nor does that bear on the question before the Court. The plaintiff's right is determined not by interest in the insured property but by the rights under the contract of insurance.

2. The disparity in the bargaining positions of the companies which write insurance and the consumers who buy it has been recognized by statute and judicial decisions, which aim at making certain that the interests of every insured are protected. The statutory fire insurance policy in this case provides that it will be void if "the insured" has committed fraud. The insurer argues that the fraud provision should be read as if it said "any person insured"; such a reading is unwarranted. The provision must be read as applying only to the insured who committed the fraud and makes claim under the policy. The provision has no application to any other person described in the policy as an insured.

3. The general law of contracts is that if two or more persons promise the same performance there is necessarily a relation of suretyship between them. However, it is unlikely that the Legislature intended to impose a mutual obligation of suretyship on each of several persons insured so that each insured must undertake to prevent each of the other insured from engaging in fraud on pain of losing all interests under the insurance policy, because an insured often has no control over the conduct of others.

4. The application of the theory of implied suretyship is no longer appropriate in insurance law. Limitations on recovery under an insurance policy must be clearly stated in the contract. The implication of a mutual obligation of suretyship among several insured persons is, in effect, a limitation on recovery by implication and not to be permitted.

5. Because the insurance policy does not expressly create a joint obligation of suretyship, to read the fraud provision as creating one would be contrary to the reasonable expectations of an insured. An ordinary person seeing his or her name included in an insurance contract without limiting language would suppose his or her interest to be covered. It appears that the policy in this case names "Robert Morgan and Helen Morgan", without more, as the insured under the policy.

The summary judgment is set aside, and the case is remanded to the circuit court for further proceedings.

Justice Fitzgerald, writing separately, would hold that deci-

sion in this case must rest on the law of real property, not on the law of personal property, and that the tenancy by the entireties is not so indivisible an estate as to make the husband and wife "one" and impute wrongful conduct of the husband to the wife. She should be able to recover one-half of the damages within policy limits.

1. The general rule is that if the interests of the insured parties are considered joint and non-separable, an innocent coinsured party is barred from recovery on an insurance policy following an act of fraud or other misconduct by another coinsured party. The Court has held that if a wife is able to show that her interest in personal property is divisible from that of her husband, then his unilateral act should not foreclose the wife from recovery under the insurance policy, and in that case specifically rejected any view which automatically ascribes the actions of the husband to the wife; other courts have found traditionally non-separable interests to be divisible on the equities of the factual circumstances. The decision in this case, however, must rest on concepts of real property and not personal property law.

2. A tenancy by the entireties is an estate of the common law created by operation of law rather than by the act of the parties through deed or will, based upon the common-law concepts of the unity of husband and wife and the disabilities of coverture of married women. The salient feature of the tenancy by the entireties was the concentration of power in the husband; he was able to exercise all the incidents of ownership except determining succession at his death should he predecease his wife. Beginning in the 1800's, married women's property acts established that a wife can exist as a separate legal entity; the automatic dominance of the husband was rejected. However, in Michigan, because the statute did not specifically mention the tenancy by the entireties, it continued to exist as it did at common law. It is the quality of survivorship that imbues the tenancy with an aura of indestructibility, for the act of one spouse cannot impair the rights of the other. The wisdom of perpetuating such an indivisible estate is questionable in view of the equities of the controversy in this case.

3. The general rule that an innocent coinsured may not recover on an insurance policy following an act of fraud by another coinsured hinges on whether the interests of the coinsured are considered joined or severable. The rationale for the rule is the idea that parties who hold joint interests in insured property have a joint obligation, resting on an implied condi-

tion of the insurance contract, to refrain from fraud, and so the fraud of one party necessarily becomes the fraud of the other. The tenancy by the entireties is a product of the common law characterized by a massive concentration of power in the husband and an indestructible right of survivorship. While Michigan has traditionally adhered to a strictly literal view of the tenancy by the entireties, it cannot in good conscience be held that the wrongful conduct of a husband may be imputed to his wife and serve to bar her from recovering the proceeds of an insurance policy. To hold today that they are "one" impermissibly ignores the separate legal status of the innocent spouse. One spouse may not be held responsible for the crime of the other. Vicarious liability is not an attribute of marriage.

4. The plaintiff may recover to the extent of her interest in the property. As tenants by the entireties, one spouse has no greater interest in the property than the other. The quantity of interest being equal and the liability being several, the innocent coinsured party may recover one-half of the damages within the limits of the policy.

Chief Justice Coleman did not participate in the decision.

91 Mich App 48; 282 NW2d 829 (1979) reversed.

OPINION OF THE COURT

1. INSURANCE — FRAUD — CONTRACTS.

An insured's right to recover on an insurance policy on real property is determined by the rights under the contract of insurance, not by the insured's interest in the property insured.

2. CONTRACTS — SURETYSHIP AND GUARANTEE — IMPLICATION.

The general law of contracts is that if two or more persons promise the same performance there is necessarily a relation of suretyship between them.

3. INSURANCE — SURETYSHIP AND GUARANTEE — IMPLICATION.

The implication of a mutual obligation of suretyship among several insured persons is in effect a limitation on recovery under the insurance policy and not to be permitted, because such limitations on recovery must be clearly stated in the insurance contract.

4. INSURANCE — FRAUD — FIRE INSURANCE — NAMED INSURED — VICARIOUS LIABILITY.

The provision of a fire insurance policy that it will be void if "the insured" has committed fraud must be read as applying only to the insured who committed the fraud and makes claim under

the policy; the provision has no application to any other person described in the policy as an insured (MCL 500.2832; MSA 24.12832).

5. INSURANCE — FRAUD — FIRE INSURANCE — NAMED INSURED — HUSBAND AND WIFE — REASONABLE EXPECTATIONS.

To read the provision of a fire insurance policy that it will be void if "the insured" has committed fraud as creating a joint obligation of suretyship would be contrary to the reasonable expectations of an insured where the policy names a husband and wife, without more, as the insured under the policy; an ordinary person seeing his or her name included in an insurance contract without limiting language would suppose his or her interest in the property insured to be covered (MCL 500.2832; MSA 24.12832).

6. INSURANCE — FRAUD — NAMED INSURED — HUSBAND AND WIFE — PROPERTY.

The fraud of a husband will not bar the wife's recovery on an insurance policy on real property which the husband and wife owned as tenants by the entireties where the insurance policy names the husband and wife, without more, as the insured under the policy.

SEPARATE OPINION BY FITZGERALD, J.

7. INSURANCE — FRAUD — COINSUREDS — VICARIOUS LIABILITY.

*The general rule is that if the interests of insured parties are considered joint and non-separable an innocent coinsured party is barred from recovery on an insurance policy following an act of fraud or other misconduct by another coinsured party.*

8. HUSBAND AND WIFE — PROPERTY — TENANTS BY THE ENTIRETY — COMMON LAW.

*A tenancy by the entireties is created when a conveyance of land is made to a husband and wife, absent explicit language to the contrary; it is an estate of the common law created by operation of law rather than by the act of the parties through deed or will, based upon the common-law concepts of the unity of husband and wife, and the disabilities of coverture of married women.*

9. HUSBAND AND WIFE — PROPERTY — MARRIED WOMEN'S PROPERTY ACT — COMMON LAW — COVERTURE.

*Married women's property acts were passed to remove the common-law disabilities of coverture; married women were given the power to contract, convey and acquire real property, sue*

*and be sued as separate legal entities, free from any spousal interference (Const 1963, art 10, § 1; MCL 557.1; MSA 26.161).*

10. HUSBAND AND WIFE — PROPERTY — TENANTS BY THE ENTIRETY — COMMON LAW.

*The salient feature of the tenancy by the entireties was the concentration of power in the husband; he was able to exercise all the incidents of ownership except determining succession at his death should he predecease his wife.*

11. HUSBAND AND WIFE — PROPERTY — TENANTS BY THE ENTIRETY — COMMON LAW — MARRIED WOMEN'S PROPERTY ACT.

*Because the married women's property act did not specifically mention the tenancy by the entireties, it continued to exist as it did at common law (MCL 557.1; MSA 26.161).*

12. HUSBAND AND WIFE — PROPERTY — TENANTS BY THE ENTIRETY — DIVORCE.

*The husband alone is entitled to possess, use, and manage entireties property, but he may do nothing without the express consent of his wife to defeat her right of survivorship; the law is not frequently called upon to adjust controversies between husband and wife as tenants by the entireties because if relations become strained and a divorce is obtained, the tenancy by the entireties ends.*

13. INSURANCE — FRAUD — HUSBAND AND WIFE — PROPERTY — TENANTS BY THE ENTIRETY — IMPUTED FRAUD.

*The wrongful conduct of a husband may not be imputed to his wife and serve to bar her from recovering the proceeds of an insurance policy for property which the husband and wife owned as tenants by the entireties; to hold that the husband and wife are "one" would impermissibly ignore the separate legal status of the innocent spouse.*

14. HUSBAND AND WIFE — VICARIOUS LIABILITY — CRIMINAL LAW.

*Vicarious liability is not an attribute of marriage; one spouse may not be held responsible for the crime of the other because married people are still individuals and responsible for their own acts.*

15. INSURANCE — FRAUD — FIRE INSURANCE — HUSBAND AND WIFE — PROPERTY — TENANTS BY THE ENTIRETY.

*A wife may recover benefits under a fire insurance policy of one-half of the damages within the limits of the policy for a house which the wife and her estranged husband owned as tenants by the entireties where the husband had intentionally started the*

*fire which damaged the house and the wife was the innocent coinsured party on the policy.*

16. HUSBAND AND WIFE — PROPERTY — TENANTS BY THE ENTIRETY.

*One spouse has no greater interest in property owned in tenancy by the entireties than the other; the quantity of interest being equal, where the liability of the spouses is several the innocent spouse may recover one-half of the interest insured under a fire policy when the fire is set by the other spouse.*

*Edgar A. Hord* for plaintiff.

*Allen, Letzring & Denenfeld* for defendant.

Amicus Curiae: *Harold Helper.*

KAVANAGH, J. We granted leave to appeal to consider whether the intentional burning of a home by one spouse will bar recovery under a statutory fire insurance policy where the policy names both spouses as "the insured". We hold in this case that it will not.

Plaintiff and her husband, as tenants by the entireties, owned a home which was insured by defendant. On January 20, 1974, it was extensively damaged by a fire started by plaintiff's husband, who was living apart from plaintiff as divorce proceedings between them were then pending. Plaintiff filed a claim under the insurance policy, which the defendant denied. Defendant asserted that since plaintiff and her husband were the insured and owned inseparable interests in the property as tenants by the entireties the fraud of plaintiff's husband was imputed to plaintiff. Plaintiff's suit was dismissed on defendant's motion for summary judgment. The Court of Appeals affirmed "with extreme reluctance". *Morgan v Cincinnati Ins Co,* 91 Mich App 48, 50; 282 NW2d 829 (1979). We reverse.

On appeal defendant contends that the question

whether an innocent insured may recover on property insurance after another insured has committed some act of fraud depends on whether the interests of the insured are considered joint or several. Defendant asserts that the property interests of parties holding as tenants by the entireties are unified and cannot be separated and therefore plaintiff cannot show an interest in the insured property separate from that interest which has been tainted by fraud.

This argument misses the point, for no interest in the insured property was tainted by fraud, nor does that bear on the question before us. Claimant's right in this matter is determined not by interest in the insured property but by the rights under the contract of insurance.

In *Monaghan v Agricultural Fire Ins Co of Watertown, NY,* 53 Mich 238; 18 NW 797 (1884), this Court addressed the issue of recovery by an innocent insured notwithstanding fraud by another insured. In *Monaghan* three minors owned a parcel of property and a house and barn on it by deed from their father. After the father's death their mother, who owned no interest in the real property, procured a fire insurance policy on the premises and contents, naming herself and the three minors as insured. After a fire damaged the house it was determined that the mother had committed fraud in reporting as destroyed certain items which she had removed from the house prior to the fire. The three minors instituted the action for recovery of fire insurance proceeds. The Court stated that recovery under the insurance contract was to be determined irrespective of the nature of ownership of the property insured.[1] Recovery was

---

[1] "When the insurance was obtained nothing was said as to the precise nature of the interest, whether separate or joint, in the property insured. Nor was it necessary. The policy was good for all,

to be determined according to the contract interests held by the respective parties. The Court in *Monaghan* construed the contract interests created by the insurance policy to be joint.[2] As a direct result of making the initial determination that the contract interests of the parties were joint the Court made the statement for which the case has come to be recognized, *i.e.,* "And if the right of action has become barred as to one of the joint contractors, it has to all of them". 53 Mich 238, 252.

Since the decision in *Monaghan* the law applicable to insurance contracts has undergone considerable development. Recognizing the disparity in the bargaining positions of the companies which write insurance and the consumers who buy the policies, both the statutory law and judicial decisions have aimed at making certain that the interests of every insured are protected.

The rule stated in *Monaghan* is a general law of contracts. Under contract law "[i]f two or more persons promise one and the same performance, there is necessarily a relation of suretyship between them". 4 Corbin, Contracts, § 925, p 702. Thus some courts have held that " '[b]ecause the agreement not to commit fraud is joint, with each insured promising that he and the other would not commit fraud, the breach caused by intentional destruction is chargeable to both insureds and

whether their interests were joint or several. *Castner v Farmers' Mut Fire Ins Co,* 46 Mich 15 [8 NW 554 (1881)]." *Monaghan v Agricultural Fire Ins Co of Watertown, NY,* 53 Mich 238, 252 (1884).

[2] "We can see good reasons in this case for holding the contract for insurance to be joint and not several, which might, and probably did, influence the defendant in entering into it. Mrs. Monaghan was the only adult party among the insured, and the one upon whom the defendant would rely to make the proper proofs of loss in case of fire, and, the only one it could hold to perform the conditions of the policy." *Id.*

precludes recovery by the innocent joint insured' ". *Klemens v Badger Mutual Ins Co of Milwaukee,* 8 Wis 2d 565, 567; 99 NW2d 865, 866 (1959).

Without limiting the principles of law applicable to contracting parties generally, consistent with the effort to protect the interest of the insured we are moved to limit the rule of law articulated in *Monaghan.*

The standard fire insurance policy prescribed by statute provides:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." MCL 500.2832; MSA 24.12832.

The insurer in this case would have us read this provision as if it stated "[t]his entire policy shall be void if * * * any person insured" has committed fraud. We believe such a reading is unwarranted, and hold that the provision voiding the policy in the event of fraud by "the insured" is to be read as having application only to the insured who committed the fraud and makes claim under the policy. The provision has no application to any other person described in the policy as an insured.

To adopt the reading of the insurer would require ascribing to the Legislature an intent to impose a mutual obligation of suretyship on each of several persons insured; that each insured must not only undertake to forbear from fraud himself, but must also undertake to prevent each of the other persons insured from engaging in fraud on pain of losing all interests under the policy. Such an intent is unlikely; as this case aptly illustrates,

an insured often has no control over the conduct of others.

We no longer consider the application of the theory of implied suretyship appropriate in insurance law. In Michigan limitations on recovery under an insurance policy must be clearly stated in the contract. The implication of a mutual obligation of suretyship among several insured persons is in effect a limitation on recovery by implication and not to be permitted under Michigan law.

Furthermore, since the provision quoted above does not expressly create a joint obligation of suretyship, to read the fraud provision as creating one would be contrary to the reasonable expectations of an insured. An ordinary person seeing his or her name included in an insurance contract without limiting language would suppose his or her interest to be covered. It appears that the instant policy names "Robert Morgan and Helen Morgan", without more, as the insured under the policy.

Henceforth whenever the statutory clause limiting the insurer's liability in case of fraud by the insured is used it will be read to bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud.

The summary judgment herein is set aside and the cause remanded for further proceedings.

Costs to plaintiff.

WILLIAMS, LEVIN, RYAN, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.

COLEMAN, C.J., took no part in the decision of this case.

FITZGERALD, J. We are asked to decide whether the intentional burning of a home, held in tenancy by the entireties, by one spouse, will bar recovery by the innocent spouse under a statutory fire insurance policy naming them both as the insured.

I

Helen and Robert Morgan owned a home as tenants by the entireties. The home was insured by the defendant Cincinnati Insurance Company. On January 20, 1974, a fire occurred which extensively damaged both the dwelling and the personal property located in it. The Morgans were living separately at the time; divorce proceedings instituted by the plaintiff were pending. It was subsequently determined that Robert Morgan was responsible for starting the fire.

Mrs. Morgan filed a claim with the Cincinnati Insurance Company for benefits under the policy, seeking to recover for both the damage to the residence and personal property. This claim was denied. She then began this action to recover the proceeds under the policy. Defendant filed and was granted a motion for summary judgment regarding the real property claim on the grounds that the fraud by one coinsured acts as a bar to recovery by the innocent coinsured. The Court of Appeals affirmed, albeit reluctantly, finding that a tenancy by the entireties is an indivisible interest which precludes recovery by one innocent party. *Morgan v Cincinnati Ins Co,* 91 Mich App 48; 282 NW2d 829 (1979).

The question of the destroyed personal property was decided upon a stipulated statement of facts submitted by the parties and is not at issue before

this Court. We consider here only the real property question.

## II

The Michigan standard fire insurance form provides:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in the case of any fraud or false swearing by the insured relating thereto." MCL 500.2832; MSA 24.12832.

The Morgans' policy was issued in both of their names. It is defendant's position that the long-standing law in Michigan is that where recovery is barred by the fraud of one named insured, it is barred to them all. The cases cited to support this position are *Monaghan v Agricultural Fire Ins Co of Watertown, NY,* 53 Mich 238; 18 NW 797 (1884), and *Ijames v Republic Ins Co,* 33 Mich App 541; 190 NW2d 366 (1971). In the *Monaghan* case, Kate Monaghan, a widow, lived with her three minor children in a home that had been given to the children by deed. In August 1880, Mrs. Monaghan applied for and obtained from defendant insurance company a policy insuring herself and her children against loss or damage to their dwelling by fire or lightning. The policy contained the standard provisions regarding forfeiture in case of any misrepresentations, concealment or fraud relating to any such loss or damage. In the middle of September 1880, a fire occurred which destroyed the home and its contents. In October, Mrs. Monaghan made an affidavit stating which items were

lost in the fire and which were saved. The insurance company learned that certain items of personal property which Mrs. Monaghan claimed to be destroyed had in fact been removed by her prior to the fire. When the insurance company threatened to prosecute, Mrs. Monaghan executed a release of all action against defendant.

In November, a guardian for the three minor children was appointed. On behalf of the children, he gave the insurer a proof of loss for the insured home. This claim stated that Kate Monaghan's interest was only in the personal property; the children were the owners of the real estate and dwelling and they were not part of any fraud or wrongdoing.

In March 1881, Kate Monaghan assigned to her three children all of her rights, title and interest in and to all claims against the defendant arising from the insurance policy. When the loss on the real property was not paid, the guardian, on behalf of the children, filed suit to recover the amount of the insurance. The decision of the Supreme Court in favor of the insurance company was based, in part, on the nature of the insured's interest in the property. The way in which the children held title was not considered important. Rather, the Court looked to see whether or not the contract was divisible. The Court considered the fact that there was one unapportioned premium paid, and reasoned that the insurance company, when entering the contract, probably looked only to Mrs. Monaghan, the one adult party, to perform the conditions of the policy.

"We are clearly of opinion that no action could be brought by any of the insured, less than the whole, to recover a loss under this policy, unless in a case where the interests of one had been assigned to the other joint

contractors. And if the right of action has become barred as to one of the joint contractors, it has to all of them. It follows that the plaintiffs, by obtaining an assignment of Mrs. Monaghan's claim and interest in the policy, can stand in no better position than they would be in had the action been brought in the names of all the joint contractors; and whatever would be a defense were she one of the plaintiffs, is equally available when suit is brought by her assignees. Any attempt on her part to defraud the company by not complying with the conditions of the policy, or any false swearing or concealment or fraud in reference to the proofs of loss, would defeat a recovery." *Monaghan, supra,* pp 252-253.

Thus, this Court held that the children, assignees of their mother's interest in the policy, received no greater rights upon the assignment than their assignor. Their interest was derivative; the fact that they held title to the realty was not determinative. Their mother's attempt to defraud the company by falsifying the affidavit barred them from any recovery on the policy.

The Court of Appeals in *Ijames v Republic Ins Co* relied on the *Monaghan* case when deciding the question, "Does the *attempted* fraud of one of two named insureds under a Michigan statutory fire insurance policy bar recovery for the whole amount of the contents loss?" *Ijames, supra,* p 542. Holding the contract indivisible as between the rights of the various named insureds, the Court stated, "*Monaghan* clearly stands for the proposition that if recovery is barred as to one of the named insureds, it is barred to them all." *Ijames, supra,* p 545. The Court later commented, "The rule of law may be harsh and inequitable. It may be in need of re-examination. If this be so, only the Supreme Court may make the re-examination which would result in a change in the precedent

which binds our bench as well as the trial bench of the state." *Ijames, supra,* p 547.

Michigan has, on the basis of these two cases, been said to adhere to the general rule that if the interests of the insured are considered joint and non-separable, an innocent coinsured is barred from recovery on an insurance policy following an act of fraud or other misconduct by another coinsured.[1] Our Court, however, departed from this axiomatic rule when in *Simon v Security Ins Co,* 390 Mich 72; 210 NW2d 322 (1973), we held that under the facts of that case the alleged theft of personalty by a husband should not automatically foreclose an innocent wife's recovery on the insurance policy. Concluding that the plaintiff wife should have the opportunity to demonstrate a separable interest in the lost articles and without expressly overruling *Monaghan,* a unanimous Court held that, especially considering the trend towards married women's separate status for certain legal purposes, "If plaintiff wife is able to show that her interest in the property is divisible from that of her husband, then his unilateral act of misconduct (if any) should not automatically foreclose plaintiff from recovery under the policy." *Simon, supra,* p 80. The emphasis in *Simon* was the need to treat the plaintiff as an individual; what was specifically rejected in that case was "any view which automatically ascribes the actions of the husband to the wife".[2] The cases cited in *Simon* demonstrate instances where courts found traditionally non-separable interests to be divisible based on the equities of the factual circumstances.[3] The statutes cited reveal the Legisla-

[1] See Anno: *Insured's Fraud—Coinsured's Rights,* 24 ALR3d 450. Also, 5A Appleman, Insurance Law and Practice, § 3594.

[2] *Simon,* pp 82-83.

[3] See *Mercantile Trust Co v New York Underwriters Ins Co,* 376

ture's attempt to remove the common-law disabilities of the wife during coverture so that she may be treated and viewed as a separate legal entity.[4] "Certainly the day is long gone when women were lumped together with children and 'other incompetents' as requiring rigid protection from such rigors as separate ownership of property." *Simon, supra,* p 83. *Monaghan* was not expressly overruled; the *Simon* Court refused, however, to apply its "conclusive presumption". In *Monaghan,* the children's rights were joint with their mother's; as coinsureds they were viewed as joint contractors with no greater defenses available to them than those of their assignor. Considered as joint contractors in the policy, their interests were non-separable and recovery was barred. The facts of the *Simon* case necessitated a different response. The Court was unwilling to label a husband and wife automatically as joint contractors on an insurance policy with an unquestionably indivisible interest. The same considerations motivate me here.

I agree with the defendant that this decision must rest on real property concepts and not personal property law. We are concerned with whether or not the insurance company is obligated to pay the proceeds to its insured, not whether such proceeds should be characterized as personal property, potentially outside the scope of property held as tenants by the entireties. I look therefore to the nature of property held as a tenancy by the entireties.

F2d 502 (CA 7, 1967) (trust company's interest divisible from homeowner's); *Hoyt v New Hampshire Fire Ins Co,* 92 NH 242; 29 A2d 121; 148 ALR 484 (1942) (that tenants in common would assume their individual interests were covered by the policy without qualification).

[4] See MCL 600.2001; MSA 27A.2001 which removed the common-law prohibition on the ability of the wife to sue or be sued without her husband's consent. Also, Const 1963, art 10, § 1.

A tenancy by the entireties is created when a conveyance of land is made to a husband and wife.

"And therefore, if an estate in fee be given to a man and his wife, they are neither properly joint tenants, nor tenants in common, for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout, et non per my* [by all and not by the half], the consequence of which is, that neither the husband nor the wife can dispose of any part, without the assent of the other, but the whole must remain to the survivor."[5]

Similar to the joint tenancy inasmuch as the unities of time, title, interest and possession must exist at the time the tenancy is created and both carry the distinguishing right of survivorship, the tenancy by the entireties has the additional requirement that a valid marriage exist between the parties at the time the estate is created. It is an estate of the common law created by operation of law rather than by the act of the parties through deed or will.[6] The tenancy is based on the common-law concept of the unity of husband and wife though in retrospect an accurate evaluation would have to be that, "in the eye of the common law, husband and wife are one person, and that one is the husband".[7] The marital union, rather than a merger of two individuals, has been aptly characterized a "supplanting of the one by the other".[8] Conceived in feudal England as part of a system of land tenures that necessitated ownership of land

[5] Blackstone, Commentaries (Gavit, ed), p 334.

[6] See Cribbet, Principles of the Law of Property (2d ed), p 95; 41 Am Jur 2d, Husband and Wife, § 57, pp 62-63; 41 CJS, Husband and Wife, § 31, p 440; *Jacobs v Miller,* 50 Mich 119; 15 NW 42 (1883).

[7] 1 Schouler, Marriage, Divorce, Separation and Domestic Relations (6th ed), § 6, p 6.

[8] Honigman, *Tenancy by Entirety in Michigan,* 5 Mich SBJ 196-197 (1926).

by men capable of bearing arms, "For purposes of property and of contract, the married woman was under a complete legal black out termed coverture."[9] She was unable to contract or convey property without her husband's consent. She could not sue nor was she capable of being sued unless her husband was made a party.[10] Upon marriage, by the right of *jure uxoris,* the husband acquired complete dominion and control over all real property held by his wife. By the right of *jus mariti,* he obtained rights in all of her personal estate. His power included all rights to possession, use, income and usufruct of his wife's property during coverture. The wife maintained a bare legal existence. Property owned by her before marriage was considered hers, although subject to *jure uxoris.* If expressly authorized, she could act as an agent for her husband.[11] While serving to consolidate in the husband the total use of her property, the disabilities of coverture were seen as serving to protect and benefit women. The idea that married women were incapable of managing their business dealings prevailed along with the belief that if a wife were allowed to control her own property, the inevitable outcome would be familial dissension.

Beginning in the 1800's, married women's property acts were passed to remove the common-law disabilities of coverture.[12] Married women were

---

[9] Phipps, *Tenancy by Entireties,* 25 Temple LQ 24 (1951).

[10] 41 Am Jur 2d, Husband and Wife, § 16, p 30.

[11] Honigman, *supra,* p 197. See, also, Phipps, *supra,* p 26.

[12] "That the real and personal estate of every female, acquired before marriage, and all property, real and personal, to which she may afterwards become entitled by gift, grant, inheritance, devise, or in any other manner, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations and engagements of her husband and may be contracted, sold, transferred, mortgaged, conveyed, devised or bequeathed by her in the same manner and with the like effect as if she were unmarried." MCL 557.1; MSA 26.161.

given the power to contract, convey and acquire real property, sue and be sued as separate legal entities, free from any spousal interference. The effect of these statutes on the tenancy by the entireties differed significantly among the states.[13] The salient feature of the tenancy by the entireties was the concentration of power in the husband; he was able to exercise all the incidents of ownership except determining succession at his death, should he predecease his wife. The new statutes established the concept that a wife can exist as a separate legal entity; the automatic dominance of the husband was rejected.

While some states interpreted the passage of this legislation to mean that the tenancy by the entireties could no longer exist, or must exist, if at all, in some other form, Michigan viewed the married women's act as an aspect of the relationship between husband and wife; the woman's change in legal status was not seen as affecting the characteristics of the tenancy by the entireties. Since the statute did not specifically mention the

---

[13] Some states adopted the view that the married women's act abolished the tenancy by the entireties. See, for example, *Clark v Clark,* 56 NH 105 (1875).

Many took the position that the tenancy by the entireties may still exist but in a modified form with each spouse having equal power to control the entireties property. See, for example, *Ross v Ross,* 35 NJ Super 242; 113 A2d 700 (1955):

"It is well settled in this state that where title to real property is held by husband and wife as tenants by the entirety, 'the wife holds in her possession during their joint lives one-half of the estate in common with her husband, and, as between themselves, the respective rights of the parties are those of tenants in common.' "

Michigan, along with Massachusetts and North Carolina, took the view that the tenancy by the entireties was not affected by the married women's acts and continued to exist as at common law. See *Fisher v Provin,* 25 Mich 347 (1872); *Morrill v Morrill,* 138 Mich 112; 101 NW 209 (1904); *Arrand v Graham,* 297 Mich 559; 298 NW 281, 300 NW 16 (1941); *Schram v Burt,* 111 F2d 557 (CA 6, 1940).

For an excellent comparison of these differing approaches, see Phipps, *supra,* pp 28-35, 46-57.

tenancy by the entireties, the tenancy was be-
lieved to continue to exist as it did at common
law.[14]

"[T]he estate by the entirety was in its origin a
mere joint tenancy, adorned with the disabilities of
coverture and a fortuitously conceived notion of an
indestructible right of survivorship."[15] The pre-
sumption exists that absent explicit language to
the contrary, a conveyance to a husband and wife
creates a tenancy by the entireties.[16] The majority
view is that a divorce converts entireties property
into a tenancy in common.[17] A joint tenant may
partition or convey an undivided share of his
estate without the mutual consent of the other
joint tenants. Doing so, however, defeats the right
of survivorship in the ordinary joint tenancy. A
tenancy by the entireties may not be so defeated.
At common law the husband was able to convey as
a life estate his interest in property by the entire-
ties, but such conveyance could only last as long as
the joint lives of the husband and wife with the

[14] "The rights of husband and wife in such an estate are purely
common-law rights, to be tested and interpreted by the rules of that
law as they existed before the wife was emancipated as to her
individual property interests. By the common law the husband con-
trolled his wife's estate, and had the usufruct, not only of real estate
standing in both their names, but of that sole seised by his wife,
whether in fee simple, fee tail or for life. It remains the law that,
while coverture continues, the husband has the control, use, rents,
and profits of an estate by entirety." *Way v Root,* 174 Mich 418, 429-
430; 140 NW 577 (1913).

See, also, *Morrill, supra,* p 114; *Arrand, supra,* pp 561-563.

[15] Honigman, *supra,* p 199.

In *Way v Root,* pp 427-428, the Court stated:

"When the husband and wife have thus together acquired an
unincumbered title to real estate they have laid up treasures, where,
without their concerted action, neither moth, nor rust, nor thieves,
nor creditors, nor anything else but death or the tax gatherer can
divest them."

[16] *Hoyt v Winstanley,* 221 Mich 515; 191 NW 213 (1922); *DeYoung v
Mesler,* 373 Mich 499; 130 NW2d 38 (1964).

[17] Phipps, *supra,* p 35.

third party becoming a tenant in common with the wife for this period.[18] Any such conveyance would be subject to the wife's right of survivorship. In Michigan, the husband alone is entitled to possess, use, and manage the entireties property, but he may do nothing without the express consent of his wife to defeat her right of survivorship. It is this survivorship quality that imbues the tenancy with an aura of indestructibility, for the act of one spouse cannot impair the rights of the other.

I question the wisdom of perpetuating such an indivisible estate in view of the equities of the controversy before us.

The general rule that an innocent coinsured may not recover on an insurance policy following an act of fraud by the coinsured hinges on whether or not the interests of the coinsured are considered joint or severable. The rationale for the rule is the idea that "spouses who hold joint interests in insured property have a joint obligation to refrain from fraud, and so the fraud of one spouse necessarily becomes the fraud of the other".[19] This obligation rests on an implied condition of the insurance contract that policyholders will do nothing which would serve to destroy the insured property and it is assumed that they will use their best efforts to protect the property.[20]

"The law has not frequently been called upon to adjust controversies between husband and wife tenants by the entireties. If relations become strained and a divorce is obtained, this type of tenancy ends and the controversies cease to be a part of the law of tenancies by the entireties."[21]

---

[18] Spiessbach, *Weeding Out the Troublesome Plant of Tenancy by the Entirety,* 2 Seton Hall L Rev 415, 418 (1971).

[19] *Steigler v Insurance Co of North America,* 384 A2d 398, 399 (Del, 1978).

[20] *Shearer v Dunn County Farmers Mutual Ins Co,* 39 Wis 2d 240, 248; 159 NW2d 89, 93 (1968).

[21] 4A Powell on Real Property, ¶ 623, pp 701-702.

I feel it would be wrong to deny recovery of the insurance proceeds to Helen Morgan. The tenancy by the entireties is a product of the common law characterized by a massive concentration of power in the husband and an indestructible right of survivorship.

While Michigan has traditionally adhered to a strictly literal view of the tenancy by the entireties, I cannot in good conscience hold that the wrongful conduct of a husband may be imputed to his wife and serve to bar her from recovering the proceeds of an insurance policy. The policy was taken out in the names of a husband and wife. To hold today that they are "one" impermissibly ignores the separate legal status of the innocent spouse. *Monaghan* is inapposite. One spouse may not be held responsible for the crime of the other. Though based on different circumstances, I agree with the words of Chief Justice Hallows of the Wisconsin Supreme Court. "Married people are still individuals and responsible for their own acts. Vicarious liability is not an attribute of marriage."[22]

Having determined that the insurance company is responsible to pay the innocent coinsured on the policy, I hold that Mrs. Morgan may recover to the extent of her interest in the property. The contract of insurance is a personal agreement of the parties, subject to the interpretation and enforcement of our courts.[23]

As tenants by the entireties, one spouse has no greater interest in the property than the other. The quantity of interest being equal and the liability being several, the innocent coinsured may

---

[22] *Shearer, supra*, p 249.

[23] *Clay Fire & Marine Ins Co v Huron Salt & Lumber Mfg Co*, 31 Mich 346 (1875); *Eghotz v Creech*, 365 Mich 527; 113 NW2d 815 (1962).

recover one-half of the damages within the limits
of the policy.

The decision of the Court of Appeals should be
reversed.