811 F.2d 603
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James BARKER, et al., Plaintiffs-appellees,
v.
Donald Playford TAYLOR, et al., Defendants-appellants.
 No. 85-1751.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1986.
 
 Before KRUPANSKY and RYAN, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendants-appellants appealed the district court's order allowing the plaintiffs-appellees to recover under fire insurance policies issued by defendants-appellants in this diversity action commenced under Michigan law. Defendants-appellants are Donald Playford Taylor (Taylor), Anthony Mitcheson (Mitcheson), and The Lincoln Insurance Company (Lincoln) (collectively, "insurers"). Taylor and Mitcheson were underwriters for Lloyd's of London. Plaintiffs-appellees are Sidney and Jocelyn Rochman (Rochmans), Leon and Martha Gutman (Gutmans) and Argyle Bowl, Inc.[1]
 
 
 2
 The record disclosed the following facts. Prior to 1970, Albert and Virginia Massoll (Massolls) owned the Argyle Bowl, a bowling alley and bar located in Detroit, Michigan. On June 1, 1970, the Massolls sold the Argyle Bowl to Argyle Bowl, Inc., a corporation wholly owned by the Rochmans and the Gutmans. In January, 1981 the insurers each issued an insurance policy to insure the Rochmans and Argyle Bowl, Inc. against loss of the bowling alley by fire. The Ward Campbell Agency (Ward Campbell), as agents for the Rochmans and Argyle Bowl, Inc., procured the three virtually identical insurance policies here in issue through the Strauss Fuchs Organization (Strauss Fuchs) in Kansas City from R.J. Saex (Saex), the general agent for the insurers. The policies listed the Rochmans and "Argyle Bowling Center", a nonexistent entity, as the insureds. Each policy included the following provisions, the first of which is mandated by the Michigan Standard Fire Insurance Policy, Mich.Comp. Laws Secs. 500.2832 and 500.2806.
 
 
 3
 This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof....
 
 
 4
 * * *
 
 
 5
 Concealment and Fraud. This policy is void if any insured has intentionally concealed or misrepresented material facts or circumstances relating to the insurance.
 
 
 6
 (emphasis added)
 
 
 7
 On December 3, 1981, Argyle Bowl, Inc. sold its interest in the bowling alley to James Barker (Barker) and BFH, a corporation owned by Barker and his wife. Thereafter, on January 21, 1982, the Rochmans and Argyle Bowl, Inc. renewed the three policies in their existing form for a period of one year. After he purchased the bowling alley, Barker changed insurance agents to the Les Bowden Agency (Les Bowden), which interacted with Saex through the Firestone Agency (Firestone) and thereafter all premiums on the policies were paid through his newly designated representative. On February 4, 1982, Firestone instructed Saex to add Barker and BFH as named insureds on the three policies. One day later, Saex approved Firestone's request of the previous day, and Firestone issued an insurance binder to reflect Barker's and BFH's addition as named insureds on each of the three policies. On February 12, 1982, Saex supplemented the existing policies with endorsements to each wherein Saex added Barker and BFH as named insureds. The endorsements did not delete or cancel the Rochmans or Argyle Bowling Center as named insureds under the existing policies, and further reconfirmed all other terms and conditions of the policies.
 
 
 8
 On February 11, 1982, Strauss Fuchs, by written notice and without the knowledge or authority from Rochmans, Argyle Bowl, Inc., or Ward Campbell, advised Saex that the policies had been "flat cancelled" because premiums had not been paid on the policies. It appears that all accrued premiums on the policies had been timely paid by Barker through Les Bowden and Firestone.
 
 
 9
 Upon reviewing a copy of the February 5 binder issued by Firestone, Sidney Rochman, noted that his name, his wife's name, and the name of Argyle Bowl, Inc. did not appear as named insureds under the policies. He immediately notified Firestone who in turn directed Saex by written communique, to include the Massolls and Argyle Bowl, Inc. as additional named insureds under the policies.
 
 
 10
 A fire destroyed the Argyle Bowl on March 2, 1982, before the request to rename the Massolls and Argyle Bowl, Inc. as insureds was acted upon by the insurers. On April 15, 1982, the insurers issued three claim checks as partial settlement for the loss. All three checks listed the Rochmans and Gutmans as payees. In addition, an internal report by a Lincoln claims examiner had concluded that the Rochmans and Argyle Bowl, Inc. were named insureds on the Lincoln policy.
 
 
 11
 The insurers thereafter denied the claim because an investigation disclosed that the fire loss was caused by Barker's arson. They also determined that the Rochmans and Argyle Bowl, Inc. were not named insureds on the policies because they had been cancelled. The Rochmans, the Gutmans, Argyle Bowl, Inc., Barker, BFH, and the Massolls thereupon commenced this action in the Eastern District of Michigan.
 
 
 12
 On February 7, 1985 the trial court, upon the motion of the Rochmans and Argyle Bowl, Inc. for Reformation and Summary Judgment, concluded that the Rochmans and Argyle Bowling Center had not been cancelled from the policies. During the trial, the court also issued an opinion reforming the insurance contract to substitute Argyle Bowl, Inc. as a named insured instead of Argyle Bowling Center having determined that "Argyle Bowling Center" was a misnomer for Argyle Bowl, Inc. which resulted from a mutual mistake. The court concluded that the parties had intended that Argyle Bowl, Inc. be named as an insured.
 
 
 13
 The district court decided in two separate opinions that the arson of one of the insureds would not bar recovery by innocent co-insureds. The jury found that Barker and BFH had committed arson and were therefore barred from recovery under the policies. The court then permitted the Rochmans and Argyle Bowl, Inc. to recover the insurance proceeds.
 
 
 14
 The insurers timely filed a notice of appeal to this Court. In their briefs and oral argument, they asserted three assignments of error: (1) the district court incorrectly concluded that the Rochmans and Argyle Bowling Center were not cancelled as insureds on the policies; (2) the district court erred in reforming the insurance contracts to name Argyle Bowl, Inc. as an insured instead of Argyle Bowling Center; and (3) the district court erred in holding that, under Michigan law, the arson of one insured does not bar recovery by other innocent co-insureds.
 
 
 15
 The district court's findings of fact should not be disturbed unless they are clearly erroneous. Universal Electric Co. v. A.O. Smith Corp., 643 F.2d 1240, 1247 (6th Cir.1981); Reynolds Metals Co. v. Acorn Bldg. Components, Inc., 548 F.2d 155 (6th Cir.1977).
 
 
 16
 Under Michigan law, an insurer relying on cancellation of a policy as an affirmative defense has the burden of proof on the issue. Beebe v. Michigan Bankers' & Merchants' Fire Ins. Co., 263 Mich. 151, 152, 248 N.W. 578, 579 (1933). An insurance policy must be construed against the insurer so as to avoid cancellation. Rothermel v. Aetna Life Ins. Co., 275 Mich. 425, 428, 266 N.W. 404, 406 (1936).
 
 
 17
 The insurers assert that the Rochmans and Argyle Bowl, Inc. were cancelled from the policies at the direction of Strauss Fuchs when it notified Saex that the policies were to be cancelled because of a failure to pay premiums.
 
 
 18
 The evidence, however, supports the district court's findings on this issue. It concluded that the memorandum from the Strauss Fuchs purporting to cancel the policy was ineffective because Strauss Fuchs had no authority to act on behalf of the Rochmans or Argyle Bowl, Inc. See O'Neil v. Northern Assurance Co., 145 Mich. 516, 108 N.W. 996, 999 (1906) (An insurance agent who procures an insurance policy has no authority to cancel the policy on behalf of the insured). The communications to Saex concerning amendments to the policy merely directed that Barker and BFH were to be included as named insureds under the policies, not that the Rochmans or Argyle Bowl, Inc. be deleted from the policies. Furthermore, the new endorsements did not state that the Rochmans or Argyle Bowl, Inc. were deleted as insureds.
 
 
 19
 In addition, the insurers' actions following the fire indicated that the Rochmans and Argyle Bowl, Inc. were recognized as named insureds under the policies. The first claim drafts named them as payees, and an internal memorandum at Lincoln listed them as additional insureds. The district court's conclusion that the Rochmans and Argyle Bowl, Inc. were insured under the three policies was not clearly erroneous.
 
 
 20
 Nor was the lower court's finding that the parties had made a mutual mistake in identifying Argyle Bowling Center instead of Argyle Bowl, Inc. as the named insured in the policies clearly erroneous. The insurers' second assignment of error is, therefore, not well taken.
 
 
 21
 In considering the insurers' third assignment of error, this Court's attention is directed to Morgan v. Cincinnati, Ins. Co., 411 Mich. 267, 307 N.W.2d 53 (1981), wherein the Michigan Supreme Court interpreted the language in the Michigan Standard Fire Insurance Policy and concluded:
 
 
 22
 Henceforth whenever the statutory clause limiting the insurer's liability in case of fraud by the insured is used it will be read to bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud.
 
 
 23
 Id., 307 N.W.2d at 55 (emphasis added). The insurers in this case assert that another clause in the contract precludes recovery by all insureds if "any insured" commits fraud.
 
 
 24
 The district court agreed. But the Court went on to note that the insurance contract must be read in its entirety to ascertain its meaning and to determine the existence of an ambiguity. Murphy v. Seed-Robert Agency, 79 Mich.App. 1, 8, 261 N.W.2d 198, 201 (1977). The Court concluded that the two provisions conflicted with each other and created an ambiguity, and an ambiguity created by inconsistencies in the insurance contract must be construed against the insurer and in favor of the insured. Benike v. Scarborough Ins. Trust Co., 150 Mich.App. 710, 715, 389 N.W.2d 156, 158-59 (1986). Furthermore, under Michigan law, the terms of the statutory policy control over other terms in the contract. Mich.Comp.Laws Sec. 500.2832 ("[A]ny other provision or agreement not inconsistent with the provisions of the policy, may be provided for in writing added hereto....) (emphasis added) See also, Dasen v. Frankenmuth Mut. Ins. Co., 39 Mich.App. 582, 584, 197 N.W.2d 835, 836 (1972). Consequently, the insurers' third assignment of error is not well taken.
 
 
 25
 Having concluded that the district court's determinations were not clearly erroneous, the judgment of that court is hereby AFFIRMED.
 
 
 
 [1]
 James Barker, B.F.H. Corporation (BFH), and the Massolls were also plaintiffs in the district court. Barker and BFH were not permitted to recover and that decision was not appealed. The insurers have since settled with the Massolls who are not, therefore, represented in this appeal