# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

ALI BAZZI,

        Plaintiff-Appellee,

and

GENEX PHYSICAL THERAPY, INC., ELITE
CHIROPRACTIC CENTER, PC, and
TRANSMEDIC, LLC,

        Intervening Plaintiffs-Appellees,

v

SENTINEL INSURANCE COMPANY,

        Defendant/Third-Party Plaintiff-
Appellant,

and

CITIZENS INSURANCE COMPANY,

        Defendant-Appellee,

and

HALA BAYDOUN BAZZI and MARIAM
BAZZI,

        Third-Party Defendants-Appellees.

FOR PUBLICATION
June 14, 2016

No. 320518
Wayne Circuit Court
LC No. 13-000659-NF

---

Before: SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

BOONSTRA, J. (*concurring*).

-1-

I fully concur in the majority opinion. I write separately because, as a member of the panel that decided *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket No 319710).[1] I feel obliged to offer some elucidation for the conflicting conclusion that I and the majority reach today, and in doing so to elaborate somewhat on the reasoning of the majority.

In vacating both *State Farm* and another unpublished decision that had reached a contrary conclusion,[2] our Michigan Supreme Court directed that those matters be held in abeyance pending this Court's decision in this case. The panel in this case has now had the benefit of substantial additional briefing and argument both in this case and in the contemporaneously considered case of *AR Therapy Servs, Inc v Farm Bureau Mut Ins Co*, unpublished opinion per curiam of the Michigan Court of Appeals, issued _____ __, 2016 (Docket No. 322339), and has had the opportunity to develop and employ a level of analysis not reflected in either of the panels' earlier unpublished opinions.

Cogent arguments exist on both sides of the issue before us. At first blush, it may appear that we are being asked to disregard decades of published jurisprudence from this Court, in favor of abrogating it based on an interpretation of recent Supreme Court obiter dicta, and to hold that the Supreme Court has already implicitly abrogated it. Were that the case, I would be inclined to conclude that we are bound to follow the binding decisions of this Court,[3] and to leave it to the Supreme Court to further develop the law in the current context, if it chooses to do so, by effecting that abrogation explicitly.

I am persuaded, however, as the majority recognizes, that the judicially-created doctrine that has become known as the "innocent third party rule" is indeed part and parcel of the "easily ascertainable rule" that the Supreme Court abrogated in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012). In *Titan*, the Supreme Court noted that "the 'easily ascertainable' rule . . . only applies when a third-party claimant is involved." *Id.*, 491 Mich at 564. Thus, while its application has been described as denying insurers equitable remedies "when the fraud was easily ascertainable and the claimant is a third party," *id.* at 550, 561, 564, the latter reference (to the claimant being a third party, and presumably thus being "innocent" of the fraud) really is surplusage because being a third party is a necessary predicate to applying the easily ascertainable rule in the first place. The Supreme Court further noted that "when it is the insured who seeks benefits under an insurance policy procured through fraud, even an easily ascertainable fraud will not preclude an insurer from availing itself of traditional legal and

---

[1] Our Supreme Court subsequently vacated that decision. See *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, 498 Mich 870; 868 NW2d 898 (2015).

[2] See *Frost v Progressive*, 497 Mich 980; 860 NW2d 636 (2015).

[3] MCR 7.215(C) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."); MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").

equitable remedies to avoid liability." Again, that means that the easily ascertainable rule only applies where the claimant is a third party to the fraud. An insurer may rescind as to a defrauding insured even if the fraud was easily ascertainable.

I therefore conclude that, in then rejecting *State Farm Auto Ins Co v Kurylowicz*, 67 Mich App 568; 242 NW2d 530 (1976), and its easily ascertainable rule, the Supreme Court must have been rejecting the totality of the rule, whether we refer to it as the "easily ascertainable rule" or the "innocent third party rule." The reason is that if an insurer may rescind a policy even as to an innocent third party where the fraud was easily ascertainable to the insurer, then it must also be allowed to rescind where the fraud was not easily ascertainable. To conclude otherwise would simply make no sense. Why would an insurer remain accountable to an innocent third party in a situation where the insurer could *not* have easily discovered the fraud, if it is not accountable to the third party in a situation where the insurer *could* have easily discovered the fraud? That must mean that, in abolishing the "easily ascertainable rule," the Supreme Court in *Titan* also rejected the "innocent third party rule." This conclusion is bolstered by the fact that, while the Supreme Court overruled not only *Kurylowicz* but also its "progeny" such as *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355; 445 NW2d 228 (1989), *Ohio Farmers* does not even address the "easily ascertainable" aspect of the rule, but only addresses (insofar as it is relevant to this case) the "innocent third party" aspect. Yet, it was overturned by *Titan*. It thus is inconceivable that, in overturning *Kurylowicz* and *Ohio Farmers*, the Supreme Court was overturning one aspect of the rule without also overturning the other. Hence the Supreme Court's broad statement in *Titan*, in response to the contention "that the 'easily ascertainable' rule is required for the protection of third parties," that "there is simply no basis in the law to support the proposition that public policy requires a private business in these circumstances to maintain a source of funds for the benefit of a third party with whom it has no contractual relationship." *Titan*, 491 Mich at 568.

Having concluded that the Supreme Court in *Titan* abolished the "innocent third party rule," I must next address the distinction relied upon by the panel in *State Farm*, i.e., that *Titan* involved optional liability insurance, while this case (like *State Farm*) involves statutory no-fault personal injury protection ("PIP") coverage. The question is: does the distinction matter? I conclude that it does not.

The Supreme Court in *Titan* indeed noted that "when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are *entirely* contractual and construed without reference to the statute." *Id*. at 554 (emphasis added). This was contrasted with a situation where "a provision in an insurance policy is mandated by statute," in which case "the rights and limitations of the coverage are governed by that statute." *Id*. The coverage at issue in *Titan* was non-statutory, purely optional liability coverage. The coverage at issue in this case, by contrast, is PIP coverage that is required by the no-fault act.

However, I conclude that this does not take PIP coverage outside the reach of *Titan's* conclusion that an insured's fraud makes the equitable remedy of rescission available. The Supreme Court said that "because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute." *Id*. It did not say that common-law defenses were only available if the coverage was "entirely" contractual; rather, it said that common-law defenses are available to contractual insurance policies, but limited that in the event that a statute "prohibits" the defense. *Id*.

In *Titan*, there was no statute requiring optional liability coverage, and no statutory prohibition on a contractual defense. Therefore, common-law contract defenses were allowed. Also in *Titan*, the insurer conceded liability (as the panel in *State Farm* noted) for the basic liability coverage that is mandated by the financial responsibility act. And the Supreme Court clarified that MCL 257.520 did not apply to all liability policies, but only to those that are required by that act. Moreover, the financial responsibility act provides that, as to the basic statutorily required liability coverage, fraud is not a defense. MCL 257.520(f)(1). The statutory disallowance of the fraud defense is therefore limited to the basic required liability coverage mandated by the financial responsibility act. As stated in *Titan*, "the rights and limitations of the coverage are governed" by the financial responsibility act, such that the limitation on the otherwise-available fraud defense applies only to the extent the statute dictates, i.e., only to the basic required liability insurance. *Titan*, 491 Mich at 554.

In this case, by contrast, the statutorily-mandated coverage is PIP coverage, not liability coverage. The financial responsibility act does not apply. See *Titan*, 491 Mich at 595-560; MCL 257.520. MCL 257.520(f)(1)'s disallowance of a fraud defense thus also does not apply. Instead, we must look to the no-fault act's provisions, and it contains no similar disallowance of a fraud defense in this situation. So, in applying *Titan's* rule that "the rights and limitations of the coverage are governed by th[e] statute," the no-fault statute at issue does nothing to limit the availability of the otherwise available fraud defense.

Further, *Titan* quotes from *Couch on Insurance* to the effect that "[the insurance] policy and the statutes relating thereto must be read and construed together as though the statutes were part of the contract . . . ." *Titan*, 491 Mich at 554, quoting 12A Couch, Insurance, 2d (rev ed.), § 45: 694, pp. 331-332. And that would mean that if there were a statutory disallowance of a fraud defense (as there is in MCL 257.520(f)(1)), it would be part of the policy and thus contractually enforceable. If, however, there is nothing in the statute (as is the case with the no-fault act) that would prohibit a fraud defense, then there is no basis by which to disallow the otherwise available fraud defense as to PIP coverage. Again, as *Titan* noted, "because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, *unless those defenses are prohibited by statute*." *Id*. (emphasis added). There being no statutory prohibition of the fraud defense in this situation, there is nothing to preclude its invocation here.

Said differently, if, as *Titan* says, we must construe the insurance policy and the statute (here, the no-fault statute) together as though the statute is part of the contract, *id*., and there is nothing in the statute to the contrary, the common-law fraud defense remains available to effect a rescission of the policy, and with it, the applicability of the statutory provisions that are otherwise incorporated into the contract. After all, if an insurer only has PIP obligations because it entered into a contract with its insured, and if it is entitled to rescind the contract because of the insured's fraud, then there is no basis for enforcing against this contracting insurer the statutory PIP liabilities that only derive (as to that insurer) from the contract that has been rescinded.

Finally, I note that this Court in prior opinions has justified the "innocent third party rule" in various ways that have ranged from "public policy"[4] to reliance on our Supreme Court's decision in *Morgan v Cincinnati Ins Co*, 411 Mich 267; 307 NW2d 53 (1981), to the language in MCL 257.520(f) of the financial responsibility act. Of those justifications, two of them (i.e., public policy and MCL 257.520(f) were expressly rejected by the Supreme Court in *Titan*. Additionally, I note that *Morgan* arose in an entirely different context, a fire insurance policy that incorporated a (now-repealed) statutory provision regarding the defense of fraud by the insured. See *Morgan*, 411 Mich at 276. The issue in *Morgan* thus involved the interpretation of that statutorily-mandated language in the policy, not the applicability of a common-law contract defense. *Id*. at 276-277.

In the face of this analysis, and that of the majority, I simply see no way to continue to apply the "innocent third party" rule in the PIP context. I therefore concur in the majority's determination, applying *Titan*, that where an insurer is able to establish that a no-fault policy was obtained through fraud, it is entitled to declare the policy void ab initio and rescind it, including denying the payment of benefits to innocent third-parties.


/s/ Mark T. Boonstra

---

[4] As the majority notes, there are potentially meritorious public policy issues that the Legislature may wish to consider. However, it is properly the role of the Legislature, not this Court, to consider and address those issues. See *Myers v City of Portage*, 304 Mich App 637, 644; 848 NW2d 200 (2014). ("[M]aking public policy is the province of the Legislature, not the courts.").