DOYLE and others, Respondents, vs. ALLSTATE INSURANCE COMPANY, Appellant: WALKER, Defendant.*

*May 7—June 3, 1958.*

* Motion for rehearing denied, with $25 costs, on November 5, 1958.

412

413

For the appellant there were briefs by *Kivett & Kasdorf,* attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack.*

For the respondents there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

For the defendant Robert Walker there was oral argument by *Charles J. Kersten* of Milwaukee.

. HALLOWS, J. The two main issues raised by the briefs and oral argument are: (1) Whether this court may review the trial court's holding that no contract existed between the defendant Allstate and defendant Robert Walker as a matter of law; and (2) whether there was an effective filing of an SR–21.

Appellant contends this court cannot review any alleged error because the respondent has not filed a notice of review and there is no error to correct, which would merely support the judgment. In its reply brief the appellant states: "Assuming that the trial court was in error in ruling on the question

of contract as a matter of law, the correction of that alleged error would in no way support the judgment appealed from. Rather, the only effect of such correction would be to reinstate the issue as an unresolved question of fact. Being unresolved it could not support 'any judgment or order."

A respondent under sec. 274.12 (2), Stats., need not serve a notice of review to this court to correct any error, the correction of which would merely support the judgment appealed from. *Pargeter v. Chicago & N. W. R. Co.* (1953), 264 Wis. 250, rehearing, 253a, 58 N. W. (2d) 674, 60 N. W. (2d) 81.

The facts pertaining to the issue of whether there was a contract with Robert Walker are not in dispute. The defendant Robert Walker and his mother and father went to a Sears store to procure insurance. In the discussion with the agent the full facts about the title, the cosigning of the conditional sales contract by the father, the use of the car by Robert Walker, and the payment of the car by Robert were disclosed. There is no claim that any of these facts were misrepresented to the agent. There is testimony that Robert Walker was told by the insurance agent that the 1952 Oldsmobile would be covered as a second car by a policy previously issued by Allstate to the father, Clarence Walker. The agent had a full understanding that Robert was the one primarily concerned with the insurance coverage on his car.

The agent was rendering a service for the defendant Allstate and his knowledge was Allstate's knowledge. If he thought the policy should be written with only Clarence Walker the insured, then the Walkers are entitled to believe that the agent was issuing the policy in a manner which would adequately cover their particular situation. It is apparent from the record that Robert Walker was led to believe that he had insurance coverage under the policy as issued by Allstate. There is testimony that he paid the six months' premium at Sears and received a receipt therefor. After the

accident Allstate by indorsement extended the insurance to the 1955 Ford. On July 20th Allstate investigated the accident and knew that Robert Walker was the sole owner of the 1955 Ford and the father, Clarence Walker, the named assured, had no apparent ownership in the Ford. On August 17, 1955, some one in the Allstate organization checked the risk as being satisfactory. Some time later a notice of premium was sent to and was paid on October 4, 1955, by Robert Walker. Shortly after the accident an SR–21 was prepared and sent by Allstate to the motor vehicle department referring to the 1955 Ford, Robert Walker as driver and Clarence Walker as owner.

Under the facts we believe the trial court was in error in holding as a matter of law that there was no contract of insurance between Allstate and Robert Walker. The policy was validly issued and since the ownership of the Oldsmobile was incorrectly described by stating the father as the sole named insured the policy should be reformed to conform with the facts known to the agent at the time of the issuance of the policy. The policy thus reformed would extend coverage to the 1955 Ford at the time of the accident. This is in accordance with the action of Allstate in issuing the indorsement covering the 1955 Ford.

The mistake in describing only Clarence Walker, the father, as the assured, did not affect the car insured, the operation thereof by Robert Walker, or the risk and hazard assumed by Allstate. In *Coats v. Camden Fire Ins. Asso.* (1912), 149 Wis. 129, 135 N. W. 524, a fire insurance policy which, through mutual mistake, did not correctly describe the land upon which the insured buildings were located was held not to be a nullity. The buildings were intended by both parties to be insured. The actual place where they were located was known to both parties. At page 132 this court said:

"We find no obstacle to its correction in this action on the policy, if it be material, without resorting to an independent action in equity to reform the policy as for a mistake so as to express the correct description of the real estate. Such a course deprives neither party of any substantial right and it promotes the ends of justice. It avoids circuity of actions and the unnecessary delays consequent upon seeking reformation in a separate action."

This court stated in *Lumbermen's Nat. Bank v. Corrigan* (1918), 167 Wis. 82, 87, 166 N. W. 650:

"True, the policy taken out by Corrigan was not on its face payable to the mortgagee, but the court found that such was the intention of the parties and that the rider was placed in the policy under the mistaken idea on both sides that it expressed that intent; and, while the judgment did not in terms reform the policy, all the facts were found which justified and called for reformation, and the judgment can only be sustained on the theory of reformation. Under such circumstances it must be considered that the omission to enter a formal judgment of reformation should not be allowed to prejudice the result here."

See also Restatement, 2 Contracts, p. 975, sec. 507, and Anno. 66 A. L. R. 763.

In facts quite similar to this case where the father, named as the owner in the automobile liability policies, held the legal title to the car as security for his son's indebtedness to him, and the general agent of the insurer had knowledge of the ownership of the automobile and of the beneficial interest of the insured's son this court held:

"The knowledge with which [the insurer] was chargeable, when its first policy was issued, it continued to be chargeable with at the time of the subsequent renewals."

The court further stated:

"The circumstances call for the application of the principle 'that one person cannot assume a position in his business

relations with another in respect to a transaction of a pecuniary nature upon which such other, acting reasonably, has a right to rely, and after such other has so acted change his position to that other's prejudice and obtain judicial aid to enable him to effectuate his fraudulent purpose.' " (Cases cited.) *Newburg v. United States F. & G. Co.* (1932), 207 Wis. 344, 351, 241 N. W. 372.

A case in point is *General Ins. Co. v. Western Fire & Casualty Co.* (5th Cir. 1957), 241 Fed. (2d) 289. In this case the mother and son stated the facts about the title and the cosigned notes to the insurance agent. The agent stated the policy could not be put in the son's name alone because the son was a minor. The court said that, if the agent's judgment either in writing the policy or in devising the form of the policy was faulty, the remedy was not a post-event cancellation because the agent's acts were the insurer's acts. The court considered there was no fatal misrepresentation of ownership and at the most the words typed in the declaration by the agent were an incorrect description of the state of the legal title. This was immaterial under the circumstances to the attachment of the risk and in no way contributed to the contingency or the accident on which the policy obligations became due. The court held the policy was validly issued and if ownership was incorrectly described it should be deemed reformed accordingly.

Under the facts of this case we believe the trial court should have held as a matter of law that there existed a policy between Allstate and Robert Walker and reformed the policy. This court corrects that error and deems the policy reformed. As reformed the policy also covers Robert Walker as owner and operator of the 1955 Ford at the time of the accident and the judgment below is sustained on this basis. In view of this determination it is unnecessary to decide the question of whether or not there was a valid and irrevocable filing of the SR-21 by Allstate.

*By the Court.*—Judgment affirmed.