SHEARER (RICHARD), Plaintiff and Respondent, v. DUNN COUNTY FARMERS MUTUAL INSURANCE COMPANY, Defendant and Appellant: SHEARER (BEVERLY), Third-Party Defendant and Respondent.

*No. 241. Argued May 7, 1968.—Decided June 4, 1968.*
(Also reported in 159 N. W. 2d 89.)

242

For the appellant there was a brief by *Jack McManus* and *Charles H. Kennedy,* attorneys, and *Larry A. Haukom* of counsel, all of Madison, and oral argument by *Mr. McManus.*

For the respondent there was a brief by *Peterson, Thedinga & Peterson* of Menomonie, and oral argument by *Carl L. Peterson.*

HALLOWS, C. J.    The evidence disclosed that the farm insured was owned by the plaintiff subject to a life estate in his mother and to the inchoate dower interest of his wife. The personal property was practically all owned by the plaintiff. The application for the fire insurance was prepared by the agent of the insurer and signed only

by the plaintiff. The policy was issued on September 21, 1961, naming only the plaintiff Richard Shearer as the insured. A standard mortgage clause was attached to the policy and a duplicate policy was sent to several mortgagees including the Farmers Home Administration (FHA).

Prior to the insuring of the property, Richard Shearer and his wife had signed a promissory note to the FHA and, together with the plaintiff's mother, had signed a mortgage on the farm to secure the note. Upon receiving the duplicate insurance policy, the FHA informed the insurance company, but not the plaintiff, that Mrs. Shearer also should be named in the policy and mortgage clause as an insured. This change was made in the insurer's records and on the policy and in a new mortgage clause sent to the FHA, but the original policy issued to the plaintiff was never changed by either the insurer or the plaintiff. However, the insurer did send by letter to the plaintiff and his wife a new replacement mortgage clause which named the plaintiff and his wife but did not send any amendment or endorsement changing the insureds on the basic policy, as good underwriting requires.

Premiums during the years 1962–1964 were billed at six-months' intervals and the statements were addressed to the plaintiff and his wife. In August of 1962, an application for additional insurance covering a new silo named both the plaintiff and his wife as insureds. This application was prepared by the insurance agent but was not signed or read by the plaintiff or his wife.

On July 2, 1964, a minor fire occurred at the Shearer home and on the next day the insurer paid the loss by check made out to "Richard and Beverly Shearer and Farmers Home Adm." This check the court found was not endorsed by the plaintiff's wife although her name was printed on the back thereof. The record is clear the plaintiff's wife never applied for insurance or dis-

cussed insurance with the insurer or its agent. The plaintiff testified he did not object to his wife's name on the check, on the premium statements, on the mortgage clause or statements of loss. He also testified that he never was consulted by the insurer or its agent in respect to the variances from his original application for insurance, that the policy did not fail to name the correct insured, that he did nothing to initiate any modification of the insurance contract, and such actions as taken by the insurer were unilateral and done at the request of the FHA.

The record also disclosed that a representative of the FHA attempted to have the plaintiff put the farm in joint tenancy at the time the loan was negotiated but the plaintiff refused to do so as he did not want his wife to be a co-owner. The plaintiff testified he understood the FHA required insurance coverage on the mortgaged property but did not know his wife was also to be named as an insured.

On July 23, 1964, a fire occurred which did damage of over $20,000. The agent and an adjuster prepared a statement of loss which named both the plaintiff and his wife as insureds. But this claim for loss was apparently not signed by the plaintiff's wife. On August 3, 1964, another fire occurred and again a statement of loss was prepared by the agent naming the plaintiff and his wife as the insureds. This proof of loss was signed only by the agent. The trial court concluded the original policy did not include Beverly Shearer as a named insured and it had not been modified in any way by the plaintiff so as to make his wife an insured.

*Reformation.*

It is argued by the insurer that the trial court was in error and the contract should be reformed because there is evidence of mutual mistake, error, inadvertence,

or at least a mistake on one side and an inequitable conduct on the other. There is no dispute in the law that a contract of insurance may be reformed to express the true contract which the parties intended and desired to put in writing and that reformation is the proper remedy to correct a mutual or common mistake when the written contract fails to express the true agreement. *See* 13 Appleman, *Insurance Law and Practice,* p. 362, sec. 7607; pp. 365–371, sec. 7609; 44 C. J. S., *Insurance,* pp. 1108, 1109, sec. 278; 17 Couch, *Insurance* (2d ed.), pp. 249, 250, sec. 66:2. The problem of reformation of insurance contracts has recently been reviewed in *Ahnapee & Western Ry. v. Challoner* (1967), 34 Wis. 2d 134, 148 N. W. 2d 646. The general rule allowing reformation of insurance contracts has long been the law in Wisconsin. In *Fountain v. Importers & Exporters Ins. Co.* (1934), 214 Wis. 556, 252 N. W. 569, a fire insurance policy was reformed to include coverage of mortgaged property because of its omission by mutual mistake. In *Schmidt v. Prudential Ins. Co.* (1940), 235 Wis. 503, 292 N. W. 447, a life insurance policy was reformed in respect to the amount of disability payments because of mutual mistake. In *Pouwels v. Cheese Makers Mut. Casualty Co.* (1949), 255 Wis. 101, 37 N. W. 2d 869, an automobile liability policy was reformed to express the intent and agreement of the applicant and of the insurer's agent and in *Doyle v. Allstate Ins. Co.* (1958), 4 Wis. 2d 411, 90 N. W. 2d 562, an automobile liability policy was reformed to include the son of the named insured as an additional insured to conform with the intent of the father and the insurance agent.

To entitle one to reformation, the evidence of the mistake and of the intended provisions of the contract which were omitted from the written agreement must be clear and satisfactory. *Jeske v. General Accident Fire & Life Assur. Corp.* (1957), 1 Wis. 2d 70, 83 N. W. 2d 167; *Jewell v. United Fire & Casualty Co.* (1964), 25 Wis. 2d 509, 131 N. W. 2d 276.

The facts in the case at bar are not sufficient to establish an intention on the part of the plaintiff that his wife was to be a named insured of the insurance policy. There is no evidence she ever intended herself to be an insured; besides, there might be some question whether an inchoate right of dower constitutes a sufficient insurable interest to sustain her as an insured. *See* 3 Couch, *Insurance* (2d ed.), pp. 208, 209, sec. 24.114; *Estate of Johnson* (1921), 175 Wis. 248, 185 N. W. 180. We must conclude the trial court's finding on this issue was not against the great weight and clear preponderance of the evidence.

## *Modification.*

The insurer claims the plaintiff and his wife have modified the original insurance policy so as to include the plaintiff's wife as an insured by their conduct, *i.e.*, (1) Applying for and receiving without objection a policy endorsement adding additional property to the coverage which named them both as insureds, (2) retaining without objection a copy of the mortgage clause naming them insureds; (3) accepting and paying premiums addressed to both, and (4) accepting benefits from a fire loss claim. The insurer claims these actions or omissions show assent to the modification of the contract made by the insureds. We think not. The significance of this evidence is really the failure of the insured to object to changes in the written contract and presents a problem of estoppel rather than of assent. Coverage in an insurance contract cannot be created by estoppel and we think the principle applies to the creation of insureds. *Jeske v. General Accident Fire & Life Assur. Corp., supra; Ahnapee & Western Ry. v. Challoner, supra;* Annot. (1965), *Doctrine of estoppel or waiver as available to bring within coverage of insurance policy risks not covered by its terms or expressly excluded therefrom,* 1 A. L. R. 3d 1139.

Most of the acts relied on by the insurer for this contention are acts of omission. The affirmative acts are in dispute. It is not shown the wife paid any of the premiums on her own behalf or that she actually received any of the benefits of the fire loss claim and neither of these elements are to be considered controlling. The change was not the result of any action on the part of the plaintiff or his wife and the failure to object cannot be considered a modification of the contract. 17 Couch, *Insurance* (2d ed.), pp. 233, 234, sec. 65.22; *Shakman v. United States Credit System Co.* (1896), 92 Wis. 366, 66 N. W. 528.

### Ratification and Agency.

It is argued acts of the FHA and the plaintiff were ratified by Mrs. Shearer. The evidence does not prove that either the FHA or Richard Shearer acted as an agent for Beverly Shearer in securing the fire insurance policy. The action of the FHA was on its own behalf, to protect itself with adequate fire protection on its security. No acts of the plaintiff husband have been shown which modified the contract and which the wife could ratify. The trial court found plaintiff's wife did not receive the $304 or any part of the insurance payment and this finding is not against the great weight and clear preponderance of the evidence.

The insurer argues that acts of strangers who assume to act as agents, as well as unauthorized acts of true agents, may be ratified, and such ratification may take the form of failure to repudiate an act, the benefits of which have been received and retained by the purported principal. But to base ratification on mere silence and failure to repudiate, the purported principal must have had full knowledge of all material facts relating to the act of the person who assumed to act as agent. 1 Restatement 2d, *Agency*, p. 231, sec. 91; *Home Savings Bank v.*

*Gertenbach* (1955), 270 Wis. 386, 71 N. W. 2d 347, 72 N. W. 2d 697. The facts in the instant case do not show the plaintiff's wife had any knowledge upon which a ratification by her can be predicated.

### Equitable Grounds.

On the theory a person should not profit from his own wrong, the insurer claims because a possibility exists that Beverly Shearer committed arson her name should be included as an insured as a matter of law so as to afford it a defense to the policy. It is also urged that this court adopt a rule providing an insurer need not pay a loss on a fire policy insuring a husband if his wife intentionally burned the premises even though she is neither the owner of the property nor an insured. We believe there is a *non sequitur* in this argument but the insurer fervently argues if the plaintiff is paid for fire damage his wife will reap a benefit. Apparently the insurer does not consider the insurance proceeds as a replacement or a substitute for the damaged property. On the grounds of public policy the law does not permit an arsonist to recover for his own loss from an insurer. Neither can a man profit from his own wrong. *See Estate of Wilkins* (1927), 192 Wis. 111, 211 N. W. 652. In an insurance policy it has been held that an insured who intentionally destroys the property insured prevents even his innocent co-insured from recovery. This is sometimes put on a ground of an implied condition in the contract that the named insureds will not destroy the property and will use their best efforts to protect it. In *Bellman v. Home Ins. Co.* (1922), 178 Wis. 349, 189 N. W. 1028, recovery was denied to a partner because of arson of his co-partner. *See also Klemens v. Badger Mut. Ins. Co.* (1959), 8 Wis. 2d 565, 99 N. W. 2d 865; 29 Am. Jur., *Insurance,* p. 777, sec. 1028; 45 C. J. S., *Insurance,* p. 871, sec. 822.

This court rejects the invitation to invent a doctrine that a spouse should be denied recovery on an insurance contract because of action of the other spouse when those actions cannot be imputed to the insured spouse. The marriage relationship should not be used as a basis for such a law. Married people are still individuals and responsible for their own acts. Vicarious liability is not an attribute of marriage.

*By the Court.*—Judgment affirmed.