In the Matter of John W. GRIMM and Florence E. Grimm, Debtors.

Esther GRIMM, Plaintiff,

v.

John W. GRIMM and Florence E. Grimm, Defendants.

Adv. No. 86–0154–7.

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 3, 1988.

Richard B. Jacobson, Borns, Macaulay & Jacobson, Madison, Wis., for plaintiff.

Frank J. Crisafi, Heibl, Heibl & Crisafi, Madison, Wis., for defendants.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

On March 28, 1986, Florence and John W. Grimm filed a joint petition under chapter 7 of the Bankruptcy Code. An adversary proceeding to determine the dischargeability of a debt pursuant to section 523(a)(6) was filed on June 10, 1986. The debt, totalling $34,598.67 exclusive of interest, is founded on a judgment entered February 18, 1986, in a case captioned *Esther K. Grimm v. John W. Grimm, Florence E. Grimm and John H. Grimm.* The jury special verdict found that John W. Grimm had obtained certain real property of Esther K. Grimm through coercion, duress, or undue influence; was unjustly enriched; had converted certain real property of Esther K. Grimm and was liable for punitive damages because he had acted wantonly, maliciously, willfully or in reckless disregard of the rights of Esther Grimm. Florence Grimm was not found liable in any respect.

On July 8, 1986, Florence filed a motion requesting her dismissal from the dischargeability proceeding. Florence contends that she is not a proper defendant in the proceeding since she is not personally liable on the state court judgment and, therefore, owes no "debt" as it is defined in the Code.

Esther concedes that Florence has no personal liability, but argues that the availability of marital property under the Wisconsin Marital Property Act (hereinafter "WMPA") in which Florence holds a present undivided one-half interest for satisfaction of the debt, constitutes a "debt" under the Code. Esther's opposition to the dismissal is primarily grounded in her concern that if Florence is dismissed from the proceeding, and the debt is then found nondischargeable, Florence will be able to argue that marital property in which she has an interest may not be reached to satisfy the debt.

The parties have keyed in on the word "debt" in section 523(a)(6) which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Therefore, the arguments offered by the parties center on sections 101(4) and 101(11) of the Code. These two definitional sections must be read in conjunction with each other. Section 101(11) defines a "debt" as a "liability on a claim." "Claim" is defined in section 101(4) as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Relying on these two definitional sections Florence contends that dismissal is appropriate since she is not personally liable on the debt at issue in the adversary proceeding. Thus, since she is not "liable on a claim" she owes no debt. The problem with this analysis is twofold. First, it fails to take into account that WMPA adds obligation of personal property to that of personal liability. The category of debt under WIS.STAT. § 766.55(2) determines the classification of property available for debt satisfaction. Thus, depending on the category of debt an individual's marital property may be obligated even though she is not personally liable. Second, her argument overlooks section 102(2) of the Code which provides that a claim against the debtor includes a claim against the debtor's property.[1]

Esther also relies on sections 101(4) and 101(11) and urges this court to adopt a

---

1. Section 102(2) was originally designed to cover non-recourse loans. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 28, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5814.

broad view of what constitutes a debt under the Code. She cites *Zwick v. Freeman,* 373 F.2d 110 (2nd Cir.1967), *cert. denied,* 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967), for the proposition that a debt should not be restricted to its strict legal meaning. While her reliance on *Zwick* is questionable,[2] there is some merit to her argument.

The Seventh Circuit recently advocated an expansive reading of section 101(4) and 101(11). The court explained:

Although the Bankruptcy Code does not, in so many words, define when a debtor 'incurs' a debt, the Bankruptcy Code's definitions of 'debt' and 'claim' go a long way in answering that question. The Bankruptcy Code defines a debt as a 'liability on a claim.' 11 U.S.C. § 101(11). The Code defines a claim as a:

(A) right to payment, *whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,* legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, *whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed,* secured or unsecured;

11 U.S.C. § 101(4) (emphasis added). On its face, § 101(4) indicates a congressional intent to broadly define claim; § 101(4)'s legislative history supports this reading. In enacting § 101(4), Congress sought to give claim 'its broadest possible definition....' Under this broad definition of claim, 'all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case.'

By defining a debt as a 'liability on a claim,' Congress gave debt the same broad meaning it gave claim. Furthermore, 'the concepts of debt and claim are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor.' Senate Report at 23, 1978 U.S. Code Cong. & Ad. News at 5809, *see also* House Report at 310, 1978 U.S. Code Cong. & Ad. News at 6267. In other words, when a creditor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred a debt to the creditor. *See In re Vasu Fabrics, Inc.,* 39 B.R. 513, 516–17 (Bankr.S.D.N.Y.1984).

*See In re Energy Cooperative Inc.,* 832 F.2d 997, 1001 (7th Cir.1987) (footnotes omitted). However, even an expansive reading of these definitional sections does not resolve the question of whether the potential obligation to make property in which one holds an interest available to satisfy a debt, should be construed as a "debt" under the Code.

Exclusive reliance on the arguments presented by the parties would lead to the conclusion that the Code lacked a coherent approach for dealing with the unique complications which arise in states with a marital or community property system. Fortunately, however, the Code does deal with community property.[3] Sections 101(6), 541(a)(2) and 524(a)(3) and (b) read together help resolve the issue in the present case.

The Code does not provide a definition of community property, but it does define community claim. Section 101(6) defines "community claim" as a

claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such proper-

---

**2.** While *Zwick* has been cited for the proposition that for a debt to exist something must be owed to the creditor, it is more frequently cited for the proposition that government sanctions do not constitute debts. The rationale in the case also relied on the concept of "provable" debt under the Act. The Code has dispensed with the concept of provable debt.

**3.** Marital property has the same essential characteristics and is expected to be treated as community property under the Code. *See Marital Property Law Wisconsin* p. 6–53. *See also* WIS. STAT. § 766.001(2).

ty at the time of commencement of the case.

The mechanics of a community claim have been explained as follows:

It authorizes the participation in bankruptcy cases of entities holding claims against the debtor and nondebtor, who under applicable state law could have satisfied their claims from community property assets of the type passing to the estate under section 541(a)(2). In granting the nondebtor's creditors the status of a community claim holder, section 101(6) seeks to insure that the community property of the spouses will be divided ratably among all creditors who could have sought satisfaction therefrom under state law. As set forth in section 726(c), the community property is then administered separately for the benefit of these creditors. *Thus, a creditor of the debtor or nondebtor spouse who would have been able to satisfy his claim prior to bankruptcy from community assets which would be section 541(a)(2) property of the estate will hold a community claim against the debtor's estate, and will participate in the distribution of certain community property assets which have passed to the debtor's estate.* This is true whether or not any such 541(a)(2) property has passed to the estate at the time of its commencement. Thus an estate containing community property presents a unique situation under the Bankruptcy Code in that its assets will be disbursed to both the creditor of the debtor and to entities who are not creditors of the debtor under state law but who hold community claims under the Code. Whether or not a creditor holds a community claim will be determined by state law.

2 *Collier on Bankruptcy,* ¶ 101.06 at 101–23, 101–24 (15th ed. 1987) (emphasis added.)

The parties have indicated that prior to bankruptcy, Esther would have been able to satisfy her claim pursuant to one of the provisions under WIS.STAT. § 766.55. While this court need not determine which exact WMPA provision would be triggered it is important to note that:

any state law distinction limiting a creditor to only a portion of the community property assets, or marshaling provisions requiring separate creditors to first satisfy their claims from non-community assets, or provisions granting a spouse reimbursement rights, are not recognized by the Code. If under any circumstances the creditor could satisfy any portion of its claim from community property of the type described in section 541(a)(2), then that creditor will be accorded the status of a holder of a community claim. Any attempt to implement the refinements of liability which exist under the laws of the various community property states would have hopelessly complicated an already difficult distribution scheme. Accordingly, to this extent the Code supersedes state law.

2 *Collier on Bankruptcy,* ¶ 101.06 at 101–24, 101–25 (footnotes omitted).

Section 101(6) requires reference to section 541(a)(2) to determine whether property described in that section has or would have passed to the estate. Section 541(a)(2) provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

. . . .

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

The authors of the leading commentary on WMPA have explained that "no reference need be made to the actual classification of property in the estate to determine a creditor status. If it is hypothetically possible for the estate to hold marital property described in 11 U.S.C. § 541(a)(2) that would be available to satisfy the creditor's claim then the creditor qualifies as having

a community claim." *See* K. Christiansen, F. Wm. Haberman, J. Haydon, D. Kinnamon, M. McGarity, M. Wilcox, *Marital Property Law in Wisconsin* (2nd ed. 1986) p. 6–71–72 [hereinafter cited as *Marital Property Law in Wisconsin*]. The authors concluded that "it appears *all* categories of obligations under section 766.55(2) whether incurred by the debtor spouse or nondebtor spouse meet the definition of community claims under 11 U.S.C. § 101(6)." *Id.*

Neither party has claimed that it is hypothetically impossible for the estate to hold marital property. In fact, the underlying assumption in their arguments is that some amount of marital property is involved. In addition, the Grimms filed a joint petition. Although this filing would create two estates, each estate essentially consists of all the community property or marital property of the joint debtor's spouse. *See In re Ageton,* 14 B.R. 833, 8 B.C.D. 404, 406 (B.A.P. 9th Cir.1981). *See also* 4 *Collier on Bankruptcy,* ¶ 541.15 at 541–81, n. 13. Therefore, a thorough reading of sections 101(6) and 541(a)(2) indicates that Esther holds a community claim.

Ordinarily, the conclusion that Esther holds a community claim would determine her rights to distribution from the estate. If the underlying debt is held nondischargeable, however, it would also have an impact on section 524(a)(3) which provides:

(a) A discharge in a case under this title—

  . . . .

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(c)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

In *In re LeSueur,* 53 B.R. 414 (Bankr.D. Ariz.1985), the court explained the operation of section 524(a)(3). The court denied dischargeability of a community debt as to the husband, but discharged the debt as to the wife. The complaint against the wife was dismissed since fraud was not shown as to her. The court stated "fraud for purposes of a bankruptcy dischargeability complaint cannot be imputed to a spouse based on a theory of Arizona community property law." *LeSueur* at 415. Despite the dismissal, the wife could not shield community property in which she held an interest from debt satisfaction. The court explained:

The Code contemplates that joint debtors who did not engage in conduct proscribed by § 523 will hold their after-acquired community property free from pre-petition community claims. 11 U.S.C. § 524(a)(3). This special community property discharge will not apply when the debtor's spouse has had a discharge denied in the same or another case commenced within six years of the present filing.

*Thus, the Code's clear policy is that the economic sins of either spouse shall be visited upon the community when a discharge is denied.* There is no reason why a different policy should follow when the spouse's offense results in an exception to discharge, rather than outright denial of discharge. A marital community whose actions do not conform to the standards imposed by law should not earn the same discharge received by joint debtors who did not engage in proscribed conduct. . . .

  . . . .

The policy choice is between allowing the innocent spouse his or her full fresh start or allowing a debtor who has been denied discharge of a particular debt to 'hide' behind the discharge of his spouse. The Code's approach is to deny the community property discharge if the debtor's spouse has been denied a discharge. 11 U.S.C. § 524(a)(3).

*LeSueur* at 416–17 (citations omitted) (footnotes omitted) (emphasis added).

The *LeSueur* analysis of section 524(a)(3) is consistent with the analysis of the court in *In re Bernardelli*, 12 B.R. 123 (Bankr.D. Nev.1981). In *Bernardelli*, the nontortfeasor spouse, who was not a party in the state court action, was joined in the dischargeability proceeding in order to make community property available for potential debt satisfaction. The court dismissed the complaint as to the nontortfeasor spouse and declined to reach a determination of whether community property would be available for debt satisfaction. Despite the dismissal the court concluded:

> In the event the debt or claim is nondischargeable, the Bankruptcy Code gives the claim the same status as to community property liability as it had prior to the order for relief. 11 U.S.C. § 524(a)(3) and (b). *See* 3 *Collier on Bankruptcy* 524-9 (15th ed).

*Bernardelli* at 124. *See also In re Giant Valley*, 14 B.R. 457 (Bankr.D.Nev.1981) ("In the event a debt is held to be nondischargeable under the Bankruptcy Code, the claimant has the same right to recover against community property as existed prior to the order for relief.")

 While Arizona and Nevada community property law is not identical to WMPA, the analysis of the Code is applicable to the present case. If the discharge is denied for a particular debt, section 524(a)(3) operates to bar the injunction from applying to that creditor. Thus, if the debt is held nondischargeable, section 524(a)(3) will prevent Florence from arguing that marital property in which she has a interest is beyond Esther's reach.

**4.** There is Wisconsin law indicating that the actions of one spouse should not be attributed to the other spouse. In *Shearer v. Dunn County Farmers Mut. Insurance Co.*, 39 Wis.2d 240, 249, 159 N.W.2d 89 (1968) the Wisconsin Supreme court stated:

> The court rejects the invitation to invent a doctrine that a spouse should be denied recovery on an insurance contract because of action of the other spouse when those actions cannot be imputed to the insured spouse. The marriage relationship should not be used as a basis for such a law. Married people are still individuals and responsible for their own acts. Vicarious liability is not an attribute of marriage.

 The result in *Bernardelli* and *LeSueur* also indicate that Florence's dismissal is appropriate. In *Bernardelli* and *LeSueur* the complaint was dismissed against both "innocent" spouses since neither the Code nor state law imputed liability to them. The same can be said, and perhaps with more conviction, about Wisconsin law.[4] Section 523(a)(6) provides a debt will be nondischargeable if it arose from a willful and malicious injury *by the debtor*. In the present case, both parties have admitted that Florence is not personally liable. Therefore, since the actions of Florence's husband cannot be imputed to her, her motion for dismissal must be granted.[5]

While *Shearer* was an insurance case and was decided before the enactment of WMPA, there is nothing in the enactment to suggest the reasoning is inapplicable to the present case.

Furthermore, while this court did not determine which WMPA provision was triggered, the parties have suggested it is a tort obligation. Section 766.55(2)(cm) of WMPA indicates an legislative intent to shield the "innocent" spouse. *See* Official comment to WIS.STAT. § 766.55.

**5.** In her motion to dismiss, the defendant requested attorney's fees. The motion provided no grounds for the request and this issue was not addressed in defendant's brief. Therefore, the request is denied.