In re Gary SMITH, SS # 454–56–7932, Debtor.

MIDI MUSIC CENTER, INC., dba Lowrey Contemporary Keyboards, Plaintiff,

v.

Gary N. SMITH, Defendant.

Bankruptcy 7–90–03564 M L. Adv. No. 91–0090 M.

United States Bankruptcy Court, D. New Mexico.

June 5, 1992.

Kevin T. Riedel, Albuquerque, N.M., for plaintiff.

Norman E. Todd, Jr., Las Cruces, N.M., for debtor, defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for trial on the merits of the complaint to determine dischargeability of debt filed by MIDI Music Center, Inc., dba Lowrey Contemporary Keyboards (Lowrey). Lowrey seeks to have a debt owed to it held to be nondischargeable. The case is unusual in

that the conduct complained of was committed by the debtor's spouse, who is not a party to this proceeding. Lowrey alleges that because the debt would not be dischargeable in the nondebtor spouse's hypothetical chapter 7 case, it cannot be dischargeable in the debtor's bankruptcy case.

## FACTS

This case has the stuff of which makes up bankruptcy judges' nightmares: complicated facts, little or no case law on point, and a statute that doesn't seem to address the situation.

Ruth Smith (hereinafter referred to as Ruth) filed her own chapter 13 bankruptcy proceeding on June 6, 1990, case no. 13–90–01756 R L. Her husband, Gary Smith (hereinafter referred to as Gary) filed this case on November 9, 1990. The meeting of creditors was set for January 24, 1991. The deadline for filing complaints objecting to discharge and dischargeability was March 25, 1991. On March 25, 1991, Lowrey filed a complaint objecting to dischargeability of its debt, based on the actions of Ruth. Ruth was not named as a defendant in the dischargeability complaint. On April 1, 1991, Ruth's chapter 13 was dismissed for failure to prosecute. Ruth filed another chapter 13 on May 20, 1991. Lowrey objected to the filing based on the ineligibility of the debtor because her unsecured debt exceeded $100,000. The Court sustained the objection, and on February 27, 1992, entered an order wherein Ruth had 15 days to convert the case to

a chapter 7 or the case would be dismissed. Ruth elected to convert and an order of conversion was entered on March 5, 1992. Lowrey takes the position that neither Ruth's original chapter 13 petition nor the conversion to chapter 7 have any effect on the dischargeability complaint filed in Gary's bankruptcy case and wishes to pursue the instant complaint.

The facts which give rise to the dischargeability complaint follow. Gary is, and at all times material hereto has been, married to Ruth, who formerly did business as Ruth's Piano Place. On June 29, 1989, and August 2, 1989, Lowrey sold certain of its products to Ruth on open account for the total sum of $24,053, of which $20,658 remains unpaid. Ruth executed a security agreement dated April 20, 1989, by which she granted Lowrey a security interest in all goods acquired from Lowrey and all proceeds of same as security for the payment of all extensions of credit, interest, collection charges, costs, fees and/or attorneys' fees sought from, incurred by and/or charged to Lowrey. In this security agreement, Ruth also warranted that she would pay all proceeds to Lowrey. Pltf.Ex. 2. The evidence showed that only a portion of the proceeds was actually paid.

## DISCUSSION

■ Lowrey is attempting to hold postpetition community property of Gary and Ruth liable for this debt pursuant to 11 U.S.C. §§ 524(a)(3) and (b).[1]   Under

---

1.  11 U.S.C. § 524(a)(3) and (b) provide:
    (a) A discharge in a case under this title—
       (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(c)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor,

whether or not discharge of the debt based on such community claim is waived.
    (b) Subsection (a)(3) of this section does not apply if—
       (1)(A) the debtor's spouse is a debtor in a case under this title, or a bankrupt or a debtor in a case under the Bankruptcy Act, commenced within six years of the date of the filing of the petition in the case concerning the debtor; and
       (B) the court does not grant the debtor's spouse a discharge in such case concerning the debtor's spouse; or
       (2)(A) the court would not grant the debtor's spouse a discharge in a case under chapter 7 of this title concerning such spouse commenced on the date of the filing of the petition in the case concerning the debtor; and

§ 524(b)(2),[2] if, hypothetically, the nondebtor spouse would not receive a discharge, then after-acquired community property will be liable for the community claim.

Under a set of facts by which only Gary had filed a bankruptcy petition, it would be a simple matter to interpret the statute. The Court believes that the interpretation offered by Lowrey under § 524(b)(2) is what the statute says: the Court would be called upon to decide the hypothetical discharge of Ruth so that she would not unfairly benefit from the community property discharge accorded Gary in his chapter 7 case. However, the facts are complicated by Ruth's bankruptcy petitions.

■ Ordinarily, a petition by one spouse passes all community property into the estate of the filing spouse. § 541(a)(2). A discharge of the debts then includes community claims and prohibits creditors from proceeding against community property acquired after the petition was filed even as against the nondebtor spouse. § 524(a)(3). *Green v. United States, (In re Green)*, 12 B.R. 594 (Bankr.N.M.1981). Therefore, in community property states, there is no need for both spouses to file unless the nondebtor spouse has substantial separate debt. The concern that a wrongdoing spouse would "hide" behind the discharge of the innocent spouse was addressed by § 524. The competing policies of giving an innocent spouse a complete "fresh start" as opposed to prohibiting the discharge of a debt to the community when one spouse has a nondischargeable debt appear to have been resolved by Congress when it enacted 11 U.S.C. § 524. *See* the discussions on this subject in Collier, 3 *Collier on Bankruptcy*, ¶ 524.01[2], 524–10 (15th ed. 1991). Under subsections (a)(3) and (b), if a debt is nondischargeable as to a spouse or the nondebtor spouse, the community does not receive a discharge, and objecting creditors may proceed against after-acquired community property. Of course this frustrates the "fresh start" of the innocent debtor spouse, but Congress made the policy choice so that "the economic sins of either spouse shall be forever visited upon the community property." Pedlar, Alan, "Community Property and the Bankruptcy Reform Act of 1978," 11 St. Mary's L.J. 349, 382, n. 22 (1979).[3]

■ The June 6, 1990, petition filed by Ruth included community property and listed community claims. Under the operation of § 541(a)(2), all community property passed into her bankruptcy estate. Ruth's filing would have discharged community debts had she received a discharge. Gary's petition of November 9, 1990, arguably could not include the community property which was already included in Ruth's estate. *Texaco, Inc. v. Bartlett, (In re Bartlett)*, 24 B.R. 605 (9th Cir.BAP 1982) (community property becomes property of the estate of the first spouse to file). Nevertheless, Gary's petition listed all community property and all community claims, which were also included in Ruth's petition. Once her first chapter 13 petition was dismissed, the community property revested in the entity in which the property was vested immediately before the commencement of the case. § 349. The community property would thus be revested in the community. However, Gary had filed his petition by that time, listing all community property. Therefore, the community property must have passed into his bankruptcy estate. He obtained a discharge of all debts listed in his petition on March 19, 1992, except the debt to Lowrey which is the subject of this adversary proceeding.

Section 524(a)(3) imposes an injunction against a creditor attempting to satisfy its debt from after-acquired community prop-

(B) a determination that the court would not so grant such discharge is made by the bankruptcy court within the time and in the manner provided for a determination under section 727 of this title of whether a debtor is granted a discharge.

2. Unless otherwise noted, all statutory citations refer to title 11.

3. Pedlar states that this quotation is attributable to Richard Levin, majority counsel to the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary of the House of Representatives and one of the primary draftsmen of the Code.

erty unless the debt would have been excepted from discharge under §§ 523, 1228(a)(1) and 1328(c)(1). The inclusion of the sections under chapter 12 and 13 clearly shows that those sections were to be used to determine dischargeability, when applicable. Section 524(b) was an amendment by the House, and "represents standards clarifying the operation of § 524(a)(3) with respect to community property." H.R. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News p. 5787, *reprinted in* Historical and Revision Notes to § 524.

■ Two different fact situations should be distinguished. The first is where both spouses file a case, be it jointly or separately. The other is where one spouse has filed but the other has not. Section 524(b)(1) applies when the spouse *is* a debtor. If the debtor spouse would be denied a discharge in the chapter under which he or she is proceeding, then § 524(a)(3) does not apply, and there is no community property discharge. Section 524(b)(2) applies if a spouse *is not* a debtor. Then the court will be called on to determine if the nondebtor spouse would be denied a "hypothetical" discharge under chapter 7.[4]

■ In the case at bar, Lowrey argues that § 524(b)(1) and (2) are only alternatives to each other. Under this argument, the creditor may choose which subsection to proceed under and Lowrey has chosen (b)(2) instead of (b)(1). The Court disagrees with this interpretation. Section 524(b)(1) clearly says that if the spouse is a debtor and would not receive a discharge then (a)(3) does not apply. Lowrey's reading totally ignores the clear language of the statute. Lowrey glossed over subsection (b)(1), concentrating instead on (b)(2), which contains the language on the hypothetical

discharge. As the Court reads § 524(b)(1) as applied to this case, the injunction against proceeding against after-acquired community property contained in § 524(a)(3) does not apply if the debtor's spouse (Ruth) is a debtor in a bankruptcy case, commenced within 6 years of the date of the debtor's petition (Gary's petition), and the court does not grant Ruth a discharge in such case concerning her. *See* § 524(b)(1). Lowrey's argument, if accepted by this Court, would allow an objection to dischargeability of one spouse under the provisions of chapter 7 in a case where both spouses had filed a chapter 13. A result which would so drastically alter the discharge provisions of the Code will not be created by this Court.

■ Again, the strict application of the statute is complicated by the fact that not only was Ruth a debtor, but she was a debtor under chapter 13 of title 11. Chapter 13 estates contain after-acquired property. § 1306. Therefore, an injunction against a creditor proceeding against after-acquired community property is inconsistent with the provisions of chapter 13. Additionally, under § 1328, discharges in chapter 13 cases are not issued until all plan payments have been made, which can be up to five years. § 1322. Is the Court to wait until the discharge has been issued in the chapter 13 before it can decide if the other spouse gets a discharge as to community property in his or her own case?[5]

■ Another problem with the various sections of the Code is clearly evident from the facts as they occurred here. If the wrongdoing spouse is in a chapter 13 while the innocent spouse is in a chapter 7, creditors deal with each debtor/spouse in their own bankruptcies. A chapter 13 debt-

---

**4.** A literal interpretation of § 524(b)(2) raises an interesting question where the debtor spouse has filed a chapter 13 petition. That spouse proceeds under the broader discharge provisions of chapter 13, but what of the nondebtor spouse? Does the court determine whether the nondebtor would get a discharge under chapter 7 when the debtor has filed a chapter 13?

**5.** A literal reading of the Code which could require up to 5 years for a court to wait to see if

a discharge would issue as to community property, is entirely unacceptable. Due to the conversion of Ruth's case to a chapter 7, the Court need not decide the question as it applies to a chapter 13 case, but clearly Congress needs to take up the issue of nondischargeability of community property claims as it applies to debtor spouses in chapter 13 cases and nonfiling spouses.

or has the right to dismiss upon request. § 1307(b). If the wrongdoer waits until the time for objecting to discharge in the innocent spouse's chapter 7 has passed and then dismisses the chapter 13, the wrongdoing spouse gets a community property discharge by virtue of the innocent spouse's discharge in the chapter 7 case and the creditor is left without a remedy against the wrongdoer. The Court believes that for a creditor to safeguard against this possibility, the proper procedure to follow is to file a complaint in the innocent spouse's chapter 7, naming the wrongdoer, seeking a determination that the wrongdoer's debt would not be discharged in a chapter 7. Then, if the possibility of a dismissal in the wrongdoer's chapter 13 becomes a reality, the creditor will have a determination regarding the dischargeability of the debt.

The primary case cited by Lowrey concerned a situation where *both* spouses filed, but only one engaged in conduct rising to the level of nondischargeability. In *Valley National Bank of Ariz. v. LeSueur, (In re LeSueur)*, 53 B.R. 414 (Bankr. Ariz.1985), the husband and wife filed. The bankruptcy court issued an order denying dischargeability of debt as to the husband. The wife had been dismissed earlier in the case. Thus, *LeSueur* involved a situation that § 524(b)(1) addressed, that of the spouse who was a debtor and had been denied a discharge. The creditor submitted a proposed judgment against all of the community property. The wife objected to the proposed judgment, arguing that because she was innocent of any wrongdoing, only the husband's one-half of the community property should be liable for the debt. The court held that the community property and the separate property of the husband would be liable for the debt. Only the wife's separate property was immune from the creditor. "The Code's policy is to deny the community property discharge if the debtor's spouse has been denied a discharge." 53 B.R. at 417. Once the Court has determined that only one spouse has committed acts which make the debts non-dischargeable, the community property is liable. Only the separate property of the

innocent spouse will not be available to satisfy creditors.

*In re Karber*, 25 B.R. 9 (Bankr.N.D.Tex. 1982), shows what can happen when creditors do not act quickly enough in the debtor spouse's bankruptcy to object to the hypothetical discharge of the nondebtor spouse. In *Karber*, creditors petitioned to have wife declared bankrupt. Wife opposed the petition on the basis that the debts had been discharged in her husband's prior bankruptcy. The court held that the debts upon which the creditors relied had been discharged in the husband's bankruptcy. None of the creditors had objected to the hypothetical discharge of the wife in the husband's petition. Therefore, they were foreclosed from proceeding against community property acquired after the date of filing of the husband's petition based on the actions of the wife. The wife's separate property which was not subject to the after-acquired community property injunction was also immune because the creditors did not establish that under Texas law, the debts were joint debts for which her separate property would be liable. The court dismissed the involuntary petition.

In *Wilson v. Bursh, (In re Bursh)*, 14 B.R. 702 (Bankr.Ariz.1981), only the wife filed. The creditor filed a complaint of nondischargeability based on a state court judgment finding that the husband committed fraud. The state court default judgment specifically provided that the damages were to be collectible from the couple's community property, as well as the husband's separate property. The court, without citing to § 524, held that the burden is on the creditor to prove actual fraud, that the wife did not engage in fraudulent conduct, and that by law, fraud could not be imputed to wife. The court held that the debt was dischargeable in the wife's bankruptcy.

There have been a few cases which apply the same reasoning as *Bursh*. The basis for courts' reluctance to impute fraud to one who did not commit wrongful acts appears to be intertwined with notice and technical requirements. If a creditor

wishes to object to the discharge of the filing spouse based on the actions of the nonfiling spouse, and does not cite to the Code section which allows a creditor to proceed in this manner, then it is not surprising that a court would not be comfortable in holding the debt to be nondischargeable. After all, the person accused of the wrongdoing usually has not been named, the jurisdiction of the court over the nonfiling spouse is in question, and fraud is something that requires an affirmative act.

Fraud cannot be imputed to the non-wrongdoing spouse and this Court has so held. *First National Bank of Grants v. Johnson, (In re Johnson),* 7–82–00767 M A, 7–82–00867 M A, Consolidated (Bankr. N.M. Dec. 20, 1983). Where a creditor attempts to get the debt owed to it determined to be nondischargeable by proceeding directly against the clearly innocent spouse based on the actions of a spouse not before the court, the complaints have been dismissed. *Bursh* and *Macy's v. Pittman, (In re Pittman),* 41 B.R. 382 (Bankr. W.D.Mo.1984). The Code provides that actions of a nonfiling spouse which would render a debt nondischargeable may make the debt nondischargeable as to the community property of the filing spouse. § 524(b)(2). The Code does not, however, allow a creditor to proceed against the innocent filing spouse based on the actions of the nonfiling, wrongdoing spouse and have the acts complained of imputed to the innocent spouse. Effectively, that is what Lowrey is attempting to do here. For a creditor to properly object to the community property discharge accorded spouses in community property states, the proper procedures must be followed. The creditor must proceed against the spouse whom is alleged to have done the wrongful acts, either in his or her own bankruptcy case if both spouses have filed, or in a hypothetical case involving the nonfiling spouse if only one spouse has filed.

Lowrey's § 524(b)(2) argument makes no sense to the Court. Section 524(b)(2) was designed so that a *nonfiling,* wrongdoing spouse would not be able to hide behind the discharge of the innocent spouse who filed. As one commentator put it, "the Devil himself could effectively receive a discharge in bankruptcy if he were married to Snow White, for her discharge would protect all after-acquired community property as part of her fresh start." Alan Pedlar, "Community Property and the Bankruptcy Reform Act of 1978," 11 St. Mary's L.J. 349, 382 (1979). Here we do not have a situation where there is a non-debtor spouse. Ruth filed her own bankruptcy case. She chose to file first, under chapter 13, which has broader discharge provisions. Lowrey could not have objected to the dischargeability of its debt in her chapter 13 case. Then Gary filed. Lowrey, in an attempt to circumvent the broader discharge provisions of Ruth's chapter 13, filed the instant dischargeability complaint in Gary's bankruptcy case. When the complaint was filed, Ruth's first chapter 13 was still pending. Therefore, this is not the situation where the Court must examine a "hypothetical" discharge regarding the conduct of a nondebtor spouse. It would be an anomaly if the creditor were able to obtain broader remedies against a filing "wrongdoing" spouse because the "innocent" spouse filed a chapter 7. Because Ruth was a debtor in her own case, the Court rules that § 524(b)(2) is not applicable to the case at bar.

Ruth was in her own chapter 13 when this complaint was filed. She was not denied a discharge in that case so the community property discharge provision in the chapter applicable to her, chapter 13, would control. Now she is in a chapter 7. The creditor may object to her discharge under the Code provision which now applies to her. Therefore, the Court finds that Lowrey has not proceeded under the correct sections of the Bankruptcy Code and the adversary proceeding will be dismissed.

### Notice

An additional concern of the Court is the notice issue. Courts have held that fraud may not be imputed to the innocent spouse. *See* discussion *supra* p. 909. Ruth Smith was not named or served in this adversary proceeding. Lowrey argues that she did

not have to be, stating that it was proceeding in Gary's bankruptcy case and that the property to be held liable was the after-acquired community property.

The cases found by the Court where one spouse was dismissed or did not have to be named are easily distinguished. They all involved cases where the *innocent* spouse was either not named, or if named, dismissed from the case early on. The courts said that the language of the Code does not require a finding of nondischargeability as to the innocent spouse for after-acquired community property to be liable if the wrongdoing spouse was denied a discharge and so the innocent spouse need not be named in order to reach after-acquired community property. None of the cases involved creditors who failed to name the spouse who was alleged to have done the acts which gave rise to the dischargeability complaint.

Where, in a joint case involving spouses, one spouse has done the act leading to the dischargeability complaint, and the other was innocent, courts have held that the innocent spouse may be dismissed. The courts held that the dismissal of the innocent spouse did not preclude the creditor from holding after-acquired community property liable for the debt. *Grimm v. Grimm, (In re Grimm)*, 82 B.R. 989 (Bankr.W.D.Wis.1988); *Valley National Bank of Ariz. v. LeSueur, (In re LeSueur)*, 53 B.R. 414 (Bankr.Ariz.1985); *Williams v. Bernardelli, (In re Bernardelli)*, 12 B.R. 123 (Bankr.Nev.1981). The *Bernardelli* court held that the creditors would have the same status as to the community property as they had before the bankruptcy, and granted the motion of the innocent spouse to dismiss her as a party because there was no need to name her in order to make community property of the debtors liable if the debt of the husband was held to be nondischargeable.

In *Judge v. Braziel, (In re Braziel)* 127 B.R. 156 (Bankr.W.D. Tex.1991), the court held that the nondebtor spouse was a nec-

essary party and denied the wife's motion to dismiss. Only the husband filed the petition. The husband and wife were named as defendants. Apparently, the wife was included by the creditors in order to object to the hypothetical discharge which she might have obtained if her husband were discharged and she were not a party. The court never stated that the wife was alleged to have committed any nondischargeable acts. The court candidly admitted that the court and counsel were uncertain as to the effect of § 524(a)(3), (b). In its findings, the court made a distinction between the case where both spouses file and where only one spouse has filed. Because both spouses would be affected by a finding of nondischargeability, even as to one spouse, the court held that the wife was a party in whose absence complete relief could not be accorded. 127 B.R. at 158.

■ Assuming the wife had not done any wrongful acts, *Braziel* goes one step beyond what this Court feels is necessary under the Code. *Grimm, LeSueur,* and *Bernardelli,* in this Court's view, more closely comport with the language of the Code in that the innocent spouse need not be named in order for a creditor to be able to proceed against after-acquired community property. Due process concerns, however, dictate that the alleged wrongdoer(s) must be named in all instances, whether the bankruptcy be real or hypothetical.

In *Huish v. Maready, (In re Maready)*, 108 B.R. 728 (Bankr.Ariz.1989), the creditor and the wrongdoing husband entered into a stipulated judgment. Although the husband and wife had filed jointly, the wife had never been named in the adversary complaint nor served as a party. The wife filed a motion to set aside the judgment as to community property of the debtors. The bankruptcy court judge held that the judgment of nondischargeability was unenforceable as to the community property of the wife.[6] On appeal, the bankruptcy appellate

---

6. Although not before it, in a footnote the court stated that it was "not in accord" with the proposition that if one spouse's debt is held to be nondischargeable on a community claim, the creditor may satisfy that claim out of the postpetition community property of the debtor's

panel of the Ninth Circuit reversed on the issue of notice and remanded the case to determine if the judgment was a community claim which could therefore be enforced against community property. 122 B.R. 378 (9th Cir.BAP 1991). Regarding notice, the court held that a creditor is not required to give the "innocent spouse" notice that the creditor will attempt to satisfy debt from community property if the debt is excepted from discharge. *Id.* at 382. The court focused on the elements of § 523 and noted that the section did not require proof that the debt is a community claim. Thus, the debt must first be excepted from discharge and the most probable time for a determination of whether the debt is a community claim is when the creditor attempts to execute on the judgment. *Id.* If the creditor is attempting to satisfy the judgment from community property, then both spouses would likely be served.

The cases make it clear: whoever is alleged to have done the acts forming the basis of a real or hypothetical complaint objecting to discharge must be named and served. The "innocent" spouse need not be named in the dischargeability complaint, but due process concerns dictate that the spouse accused of wrongdoing must be given an opportunity to defend on the merits.

■ The Court thinks it is imperative that the spouse upon whose acts the dischargeability complaint is based must be named. Only then will due process concerns be addressed. Since Lowrey only named Gary, his defense was primarily that the debts did not benefit the community and thus, the community could not be held liable. If Ruth had been named as a defendant and had had an opportunity to defend herself on the merits, the defense would likely have been very different. The Court finds that Ruth was not afforded due process, adding to the basis for dismissal of the complaint.

spouse. The court felt that such an outcome denies a fresh start to the debtor spouse. "By denying the protection of the innocent spouse's discharge to her community property, the wrong doing [sic] of the non-innocent spouse is effective-

This does not work an injustice to the creditor. Lowrey still has remedies available to it. Ruth converted to her own chapter 7 upon the dismissal of the chapter 13. Therefore, Lowrey may file a complaint objecting to dischargeability in her case, where the Court believes it is more properly brought.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052. An appropriate order shall enter.

### ORDER

This matter came before the Court for trial on the merits of MIDI Music Center, Inc., dba Lowrey Contemporary Keyboards' (Lowrey) complaint to determine dischargeability of debt. Lowrey seeks to have a debt owed to it to be held nondischargeable. For the reasons stated in the memorandum opinion entered herewith,

IT IS THEREFORE ORDERED that the complaint is dismissed.

IT IS FURTHER ORDERED that the defendant submit a judgment in conformity with the memorandum opinion and order within 10 days of the date of this order.

ly imputed and the effect of the discharge is wiped out." 108 B.R. at 732, fn. 5. This Court feels that this interpretation flies in the face of the Bankruptcy Code.